UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6186-CIV-UNGARO-BENAGES

WILTON MANORS STREET SYSTEMS,
INC.,

    Plaintiff,

vs.

CITY OF WILTON MANORS,

    Defendant.

_____/

**PLAINTIFF, WILTON MANORS STREET SYSTEMS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Wilton Manors Street Systems, Inc. ("Street Systems"), moves pursuant to Fed. R. Civ. P. 56 and S.D.Fla.L.R. 7.5 for entry of summary judgment on its claims against Defendant, the City of Wilton Manors ("the City"), based on the following statement of undisputed material facts and memorandum of law and the concurrently filed supporting Affidavits of Daniel L. Hardin and Gary R. Rutledge, and states:

1. This is an action for declaratory and injunctive relief and attorney's fees challenging the constitutionality of a 1997 ordinance adopted by the City regulating the use of outdoor advertising within city limits. Plaintiff's Complaint was filed on February 4, 2000.

2. The City's 1997 sign ordinance was an unconstitutional exercise of its police powers and an abridgement of Street Systems' First Amendment rights, for six basic reasons:

    (1)    The sign code evidenced a preference for commercial on-premises advertising over various forms of noncommercial speech (such as political advertising);

(2) The sign code contained exceptions to its wholesale ban on off-premises speech that impermissibly discriminated between types of noncommercial speech based on the content of the message;

(3) The distinction drawn in the ordinance between on-premise and off-premise advertising bore no relationship to the City's asserted interests in traffic safety and maintaining an attractive appearance. A sign will present the same impact on traffic safety and aesthetics whether it advertises on-premise or off-premise speech. As such the ordinance did not advance the City's asserted interests in enacting it;

(4) Less restrictive means were available to the City to advance its interests, such as through limitation of all signage per lot, dimensions or location without the need to address sign content;

(5) The ordinance violated constitutional standards in its treatment of political speech. While commercial signs could permanently advertise the owner and property, political signs connected with a pending election were allowed on a temporary basis only and required a cash bond to secure the dismantling of the sign within 15 days after the election. Further, forfeiture of the cash bond was authorized for anyone violating the provisions of the ordinance dealing with temporary signs. Moreover, political signs were treated in different ways depending wholly on their content. For example, political signs concerning current campaigns were permitted, but issues of a political nature without reference to matters on a ballot could be subject to prohibition; and

(6)   The sign code lacked standards to guide the discretion of the officials administering it. A sign referring to an issue of the day could conceivably be exempted from regulation as a "permanent political sign"; subject to the Ordinance as one "relating to elections" and hence requiring a temporary permit; or simply regarded as an off-premise sign which the ordinance expressly prohibited. The choice was left to arbitrary determination by the building inspector.

3.   On January 25, 2000, after SIS had apprized the City of the nature of its proposed constitutional challenge to the 1997 Code,[1] the City held the first reading of Ordinance Z-212. The ordinance was adopted on February 8, 2000 and it amended the 1997 code in certain particulars: the "Purpose" section was augmented by additional references to aesthetics and traffic safety.[2] Also added was a provision stating that "Any sign containing noncommercial copy shall be deemed an on-premises sign, and any sign authorized in this article is allowed to contain noncommercial copy in lieu of any other copy." Finally, the ordinance deleted Section II-5(c) of Article II, titled "Temporary Political Signs," and now authorizes the posting of temporary "political" signs if they pertain to a "time, event purpose, which is no longer imminent or pending", provided they be removed within seven days subsequent to the time or event.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

Street Systems contends that the following material facts are undisputed:

---

[1]   See the Affidavit of Gary Rutledge and the documents comprising Exhibit "D" attached thereto.

[2]   "D: to Create an aesthetic and enjoyable appearance for city visitors and residents; E. To safeguard and enhance property values within the community; F. To preserve the beauty and unique character of the city; G. To promote pedestrian and traffic safety."

3

1.  On May 27, 1997, the City enacted a comprehensive sign ordinance, Ordinance No. Z-199.

2.  Article 11-5.C of Ordinance No. Z-199 was amended by Ordinance No. Z-205, enacted on February 10, 1998.

3.  On July 8, 1999, SIS submitted applications for six permits to construct outdoor advertising off-premise signs within the City.

4.  Each of the six sites was in an area zoned for commercial use and meeting state requirements for outdoor advertising.

5.  On August 10, 1999, the City notified SIS that the six applications had been denied on the basis that the City's sign ordinance prohibited such signs.

6.  On September 1, 1999, SIS's counsel notified the City of SIS's claim that the City's sign ordinance was patently unconstitutional.

7.  On November 22, 1999 and December 29, 1999, SSI's counsel provided the City with detailed statements of the constitutional defects in the City's sign ordinance.

8.  In response to SIS's claim, the City amended its 1997 sign ordinance in its entirety by the enactment of Ordinance No. Z-212 on February 8, 2000.

9.  Outdoor advertising increases the sales of products and produces numerous direct and indirect benefits to the public by the communication of valuable commercial, political and social information.

10. Many businesses, politicians and other persons rely upon outdoor advertising because other forms of other advertising are insufficient, inappropriate, or prohibitively expensive.

## MEMORANDUM OF LAW

1. **The Wilton Manors Sign Ordinance challenged in this litigation was facially unconstitutional on grounds of overbreadth and vagueness.**

The City's 1997 sign ordinance was a comprehensive regulatory scheme governing the erection of signs within Wilton Manors. Both commercial and noncommercial speech were subject to the strictures of the ordinance, which dealt with the use of commercial signs, political campaign signs, signs for places of worship, public institutions and points of interest, signs relating to the names of neighborhood civic associations, governmental information signs, historical markers and decorations and festoons of light.

The definition of a "sign" was all-embracing: it was described in Section II-2 (26) of Article II as any structure that made use of a writing to "communicate information of any kind to the public." The purpose of Article II was stated to be to "facilitate and efficiently transfer information" in a manner which would not "endanger the health, safety and general welfare of the public."

The City's sign ordinance contained no ambiguity concerning its treatment of signs carrying non-commercial messages. The structure of the ordinance clearly considered signage carrying noncommercial speech as encompassed within its terms. The framers of the ordinance took care to determine that certain subjects of noncommercial speech, though clearly off-premise, could be erected. Section II-5(C), for example, expressly authorized temporary political campaign signs, an example of noncommercial speech which would not need specific authorization if the ordinance were to apply only to commercial signage. See Metromedia v. City of San Diego, 649 P.2d 902, 907 (Cal. 1982). In similar fashion, Section II-5(A)(6)(a) authorized signs for places of worship, public

5

institutions and points of interest; Section II-5(A)(6)(b) permitted signs relating to the names of neighborhood civic associations; Section II-3(C)(1) permitted governmental information signs; and Section II-3(C)(2) authorized the erection of historical markers. Other noncommercial signage supporting a cause which was not the subject of an election ballot was prohibited as "off-premise" unless a City official determined that such signage represented a "permanent political sign." Section II-5(C).

Given the clarity with which the ordinance deals with noncommercial speech, anecdotal evidence may not be offered to contend that the ordinance was intended to regulate commercial speech only. The Eleventh Circuit has recently emphasized the inappropriateness of construing an ordinance in contradiction to its plain meaning. In Harris v. Garner, 2000 U.S. App. LEXIS 15045 (11th Cir. June 27, 2000), the court commented on the use of legislative history:

> When the import of the words Congress has used is clear, as it is here,
> we need not resort to legislative history, and we certainly should not
> do so to undermine the plain meaning of the statutory language.

Id. at * 16.

The statutory language used by the City leaves no room for doubt that the ordinance was designed to allow merchants to advertise an on-premise commercial message, defined in Section II-2(8) as a sign that "directly or indirectly names, advertises or calls attention to a business, product, service or other commercial activity", while prohibiting a business or individual from calling attention to a product or service or idea which bore no relation to the activities upon the premises where the sign was located. Accordingly, the thrust of the ordinance was to authorize permanent on-premise commercial signs while completely banning permanent off-premise noncommercial as well as commercial signs (with specified exemptions for certain categories of noncommercial speech).

6

As such, the ordinance contained the constitutional infirmities afflicting the billboard ordinance reviewed by the United States Supreme Court in <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490, 494-96 & n.3 (1981): commercial on-premises signs were allowed; noncommercial off-premises messages were prohibited.

In similar fashion, the City violated the principles established in <u>Metromedia</u> by "picking and choosing" among the subjects of noncommercial speech it would allow on signage in the City. In most instances, whether off-premises noncommercial signs were exempted or prohibited turned on whether or not they conveyed messages approved by the ordinance. Signs for places of worship, public institutions and "points of interest" were authorized by Section II-5(6), while "decoration and festoons of light" signage were limited to "recognized holidays". Temporary political signs were authorized, albeit on stringent terms, yet other noncommercial signage supporting a cause which was not the subject of an election ballot were prohibited as "off-premise" unless a City official determined (without any standards to guide him) that the signage represented a "permanent political sign." Section II-5(C).

The 1997 ordinance also violated the principles expressed in the United States Supreme Court's decision in <u>City of Cincinnati v. Discovery Network, Inc.</u>, 507 U.S. 410, 417 (1993), where the Court disallowed restrictions on commercial speech because of the failure of the regulation to support the government's purpose in enacting it. That case overturned a narrow ban on commercial newsracks, where the majority of the City's newsracks were noncommercial. <u>Id.</u> at 412. The Court found the content discrimination between commercial and noncommercial speech irrational, noting that "the city's argument attaches more importance to the distinction between commercial and noncommercial speech than our cases warrant and seriously underestimates the

7

value of commercial speech." Id. at 419.

What the majority decision in Discovery Network did was to change the burden of proof applicable to the governmental body seeking to uphold its zoning. Id. at 416. A city attempting to justify restrictions on commercial off-site speech can no longer simply rely on the naked assertion of an "on-site/off-site" distinction; it must now proffer direct evidence, rather than speculation, that its ordinance will alleviate the harms which led to its passage and that the solution imposed by statute is a "reasonable fit" between the legislature's ends and the means chosen. Id. To do so, the local government must show that its goal was substantial, and the costs carefully calculated. Id. at 416 n.12 (quoting Board of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989)). It is the government, said Justice Stevens, which has the burden to affirmatively "establish the reasonable fit we require." 507 U.S. at 417. Cincinnati had failed to meet this burden.

Cincinnati had argued that its primary concern was with the aggregate number of newsracks on its streets. Id. at 426. Justice Stevens swept this contention aside in language equally applicable to outdoor signs, stating: "[o]n that score, however, all newsracks, regardless of whether they contain commercial or noncommercial publications, are equally at fault." Id.

In its Amended Complaint, SIS has contended that Wilton Manors had available to it a plausible, less restrictive alternative to an outright ban on off-premise signs, such as limiting signage by location, height or number. See ¶ 22. A court should not assume such an alternative would be ineffective; it is the City's obligation to prove the alternative would be ineffective to achieve its goals. United States v. Playboy Entertainment Group, Inc., No. 98-1682, 2000 WL 646196, at *9 (U.S. May 22, 2000). The City cannot meet this burden. The distinction drawn by the City bears no relationship to its asserted interests in traffic safety or aesthetics: a sign presents

8

no greater threat to these interests whether it advertises a product sold on the premises or elsewhere. As the court held in Outdoor Sys., Inc. v. City of Merriam, Kan., 67 F. Supp. 2d 1258 (D. Kan. 1999), a case involving a similar ordinance:

> Defendant has not shown, or even argued, any aesthetic or traffic safety distinction between these various types of signs. The Court is not aware of any aesthetic or traffic safety difference between a "Vote for Joe" sign (which is restricted to 30 days) and a "Joe's Pizza" sign (which may be permanent).

Id. at 1267; accord Statesboro Publ'g Co. v. City of Sylvania, 516 S.E.2d 296, 297 (Ga. 1999); Rockwood v. City of Burlington, Vt., 21 F. Supp. 2d 411, 414, 423 (D. Vt. 1998); Knoll Pharm. Co. v. Sherman, 57 F. Supp. 2d 615, 622-23 (N.D. Ill. 1999); People v. Jones, 702 N.E.2d 984, 988 (Ill. App. Ct. 1998), aff'd, 721 N.E.2d 546 (Ill. 1999); contra: Adventure Outdoor Adver., Inc. v. City of Pompano Beach, Fla, Case No. 96-6196-CIV-ZLOCH (S.D. Fla. Nov. 16, 1999), on appeal to the Eleventh Circuit.[2]

The treatment of political signs by the City's sign ordinance also violated constitutional jurisprudence as exemplified by the decision of the Eighth Circuit Court of Appeals in Whitton v. City of Gladstone, Mo., 54 F.3d 1400, 1406-09 (8th Cir. 1995). The federal appellate court there relied upon Discovery Network to affirm an order holding provisions of the municipality's sign code regulating political speech-- substantially similar to those employed by the City of Wilton Manors-- unconstitutional.

The City of Gladstone had argued that it had significant interests in maintaining its

---

[2] District Judge Zloch's decision in Adventure Outdoor Adver. v. City of Pompano Beach, Fla. is discussed in detail in Mr. Cohen's opinion letter of December 22, 1999, one of the documents furnished to Wilton Manors by SIS' counsel with his letter of December 29, 1999. Mr. Cohen's opinion letter is annexed to the Affidavit of Gary Rutledge as part of Exhibit "E".

9

aesthetic beauty and promoting traffic safety, and that the unrestricted proliferation of political signs significantly detracted from those interests. Id. at 1403. The Court of Appeals found that the City of Gladstone had not presented sufficient evidence that political signs detract from aesthetics any more than other signs permitted to stand for longer periods. Id. at 1407. It found the ban "content-based" "because it makes impermissible distinctions based solely on the content or message conveyed by the sign." Id. at 1404. The court declared that "a permanent ground sign with no message could be erected and would not be subject to the durational limitations while the same sign advocating a political candidate would be." 54 F.3d at 1404 n.8.

The City of Wilton Manors' sign ordinance was subject to the same constitutional defects. Its provisions clearly treated commercial signage more favorably than temporary political signage. Durational limitations and fines for violation of the code provisions concerning removal were not imposed on any commercial on-premise signs which merchants were permitted to erect to permanently advertise the wares sold on their premises.

The City's sign ordinance also lacked any standards to guide the discretion of the officials administering it when construing a "political" message sought to be erected on a sign, much less narrow, objective and definite guidelines. What of an issue raised during an election campaign that had ended? Must a sign referring to that issue be removed on penalty of forfeiture of a cash bond pursuant to the provisions governing temporary campaign signs? Might it remain as a "permanent political sign"? Or should it be regarded simply as an "off-premise" sign prohibited completely by the ordinance? A building inspector confronted with this problem would receive no guidance from any of the ordinance's provisions. See, e.g., United States v. Frandsen, 212 F.3d 1231 (11th Cir. May 25, 2000); Staub v. City of Baxley, 355 U.S. 313, 322 (1958); accord Drexel v. City

of Miami Beach, 64 So. 2d 317, 319-20 (Fla. 1953) (en banc).

### 2. SIS' Challenge to the City's Sign Ordinance was not Rendered Moot by the Enactment Of the Amendatory Sign Ordinance.

It is apparent that the City's position in this litigation is in direct conflict with National Adver. Co. v. City of Fort Lauderdale, 934 F.2d 283 (11th Cir. 1991). In both actions, curative amendments of sign codes were taken by the municipalities only after receipt of claims by the respective sign companies attesting to the unconstitutionality of the ordinances involved. See 934 F.2d at 284. In neither case was there any consideration given by the municipality to amending its ordinance until the sign company gave it specific illustrations of unconstitutionality. Id.

The City of Fort Lauderdale, in its brief to the Eleventh Circuit, had argued:

> The Sign ordinance has now been amended and is constitutional. There can be no rational argument that the CITY would seek to return to the form of the old ordinance prohibiting billboards. NATIONAL has not carried its burden to prove the CITY is likely to reenact the old form of sign ordinance.

Brief of Appellee at 28.[4]

The Court of Appeals, however, refused to place that burden on National Advertising to disprove the City's promise. The burden of showing that the City had recognized the consequences of enacting an unconstitutional statute and would not return to its old ways was squarely placed upon Fort Lauderdale, and the Supreme Court has recently reaffirmed the correctness of that ruling, emphasizing the "heavy burden" placed upon the party asserting mootness to persuade a court that

---

[4] In the subsequent decision in the case, National Adver. Co. v. City of Fort Lauderdale, 8 F.3d 36 (11th Cir. 1993) ("National II"), the Eleventh Circuit expressly noted that "[n]othing in the Record suggests that the City's statement [that it would be "willing to agree" not to reenact the old ordinance] was made in bad faith or that the City will reenact the unconstitutional ordinance." See Exhibit "D" to the Affidavit of Gary R. Rutledge.

11

the challenged conduct could not reasonably be expected to start up again. Adarand Constructors, Inc. v. Slater, 120 S. Ct. 722, 725 (2000). On appeal the Eleventh Circuit in National Advertising rejected the City of Fort Lauderdale's claim that its official discontinuance of the allegedly offensive conduct had mooted National's claims. Id. at 286.[5] It labelled the law as being "well settled" in that

> a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. . . . The city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.

Id. (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)); accord Solomon v. City of Gainesville, 763 F.2d 1212, 1213 n.1 (11th Cir. 1985); contra: Revolution Outdoor Adver.Inc. v. City of Casselberry, No. 98-1344-CV-18-C (M.D. Fla.2000), on appeal to the Eleventh Circuit, Docket No. 00-10863-HH.

See also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 2000 WL 1035381 (11th Cir. 2000). Coalition, decided by the Eleventh Circuit on July 27, 2000, essentially holds that issues presented by a constitutional challenge to an existing ordinance will not be mooted by passage of a subsequently enacted ordinance which fails to fundamentally alter the statutory framework so as to render the original controversy a mere abstraction. While the court there addressed the plaintiffs' challenge to the constitutionality of the original ordinance by evaluating the subsequently enacted superceding ordinance, the same result would not be adequate here. The

---

[5] In National Adver. Co. v. Town of Babylon, 900 F.2d 551, 554 n.2 (2d Cir.), cert. denied, 498 U.S. 892 (1990), amendments of sign codes during the course of that litigation had also led the defendant municipalities to raise claims of mootness. The Second Circuit rejected the mootness challenges of each municipality, relying on City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982), as did the Eleventh Circuit in National Advertising's challenge to the sign ordinance of Fort Lauderdale.

February 8, 2000 ordinance enacted by the City of Wilton Manors, in the words of the Eleventh Circuit, "changed [SIS'] substantive rights" stemming from the unconstitutionality of the 1997 sign ordinance and deprived SIS of rights accruing to it under Florida state law. See National Adver. Co. v. City of Fort Lauderdale, 8 F.3d 36 (11th Cir. 1993) ("National II"). For that very reason, in National Adver. v. City of Fort Lauderdale, 934 F.2d 283 (11th Cir. 1991) ("National I"), the Eleventh Circuit remanded the action to require the district court to consider the constitutionality of the original sign ordinance rather than the successor measure adopted after commencement of litigation.[6]

Like facts should receive like treatment. The decision in National I has been oft-cited and the Eleventh Circuit has noted "our uncompromising adherence to the rule of stare decisis and our binding obligation to follow the precedential decisions of this circuit." Brooks v. Central Bank of Birmingham, 717 F.2d 1340, 1343 (11th Cir. 1983).[7]

3. **The Recent Amendments to the City's Sign Ordinance Fail to Cure its Constitutional Invalidity.**

The February 8, 2000 Wilton Manors sign ordinance, which continues the prohibition of off-premises commercial speech, cannot be justified under current caselaw in the Eleventh Circuit and the United States Supreme Court. The City simply cannot satisfy the "intermediate scrutiny"

---

[6] Accord: National Adver. v. Town of Babylon, 900 F.2d 551 n.2 (2d Cir.), cert. denied, 498 U.S. 892 (1990) ("In addition, this appeal is not moot because National might have secured some vested rights under state law in the interim").

[7] Recent precedent in the Supreme Court lends added support to SIS' contention that its claim to vested rights would be lost absent a ruling on the constitutionality of Wilton Manors' 1997 sign ordinance. See City of Erie v. Pap's A.M., 120 S. Ct. 1382, 1390 (2000), where a majority of the Court stressed the impropriety of dismissal where one of the parties would suffer an ongoing redressable harm as a result. Id. at 1390.

13

test for restrictions on commercial speech set forth in Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557 (1980). The legislative history of the amendment sets forth no studies or empirical evidence of any sort to suggest that structures identical in all respects to structures allowed by the ordinance may be prohibited in the name of traffic safety or aesthetics simply because of the message contained on the sign face.

Such a distinction must target an identifiable harm and mitigate against such harm in a direct and material manner. No such harm has been identified nor shown to have been alleviated by the ordinance. As a result, the revised Wilton Manors sign ordinance cannot pass constitutional muster. Mason v. The Florida Bar, 208 F.3d 952, 956 (11th Cir. 2000).

If the constitutionality of the Wilton Manors' sign ordinance as enacted in 2000 is to be examined, key to a determination of the constitutionality of the amended ordinance is the decision of the Supreme Court in City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410 (1993), where the Court declared in footnote 20 that Metromedia "did not say . . . that San Diego could distinguish between commercial and noncommercial off-site billboards that cause the same aesthetic and safety concerns." See 507 U.S. at 425, n.20 (emphasis supplied). See the discussion of this point by the Seventh Circuit in Lavey v. City of Two Rivers, 171 F.3d 1110, 1115 & n.16 (7th Cir. 1999) ("this footnote [i.e., footnote 26 in Metromedia] is not dispositive in this case in light of the later Discovery Network footnote implying that such an ordinance is underinclusive unless sufficient evidence of a fit between the distinction and the city's safety and aesthetics goals exists").

The prohibitions in both the 1997 and 2000 sign ordinances of Wilton Manors were specifically directed at the subject matter of the signs, permitting advertisers to display commercial on-site messages while prohibiting those same advertisers from displaying other off-premise

14

commercial or noncommercial matters (in 1997) or off-premise commercial matters alone (in 2000). The ordinances were thus content-based in their intended purpose and effect. One World One Family Now v. City of Miami Beach, 175 F.3d 1282, 1286-87 (11th Cir. 1999); North Olmstead Chamber of Commerce v. City of North Olmstead, 2000 U.S. Dist. LEXIS 978 (N.D. Ohio 2000).

Nor is reliance upon the Eleventh Circuit's decision in Southlake Property Assocs., Ltd. v. City of Morrow, Ga., 112 F.3d 1114 (11th Cir. 1997), cert. denied, 525 U.S. 820 (1998) ("Southlake") justifiable in seeking to uphold the amendments to the Wilton Manors sign ordinance. The Southlake court upheld an ordinance banning off-premise commercial speech, but was never asked to examine the sign ordinance involved in that case pursuant to each of the elements set forth by the Supreme Court for evaluating the constitutionality of regulations involving commercial speech, as mandated by Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 563-66 (1980).

The plaintiff in Southlake limited his challenge to a claim that Morrow's ordinance failed only the second prong of the Central Hudson test (i.e., the ordinance must seek to implement a substantial governmental interest). The plaintiff had simply alleged that the ordinance was silent as to its purposes. 112 F.3d at 1116. The Circuit Court, however, credited the city's defense, to wit, that a Statement of Findings in the ordinance had in fact recited Morrow's significant interest in traffic safety and aesthetics. Id. As a consequence of the plaintiff's failure to raise any other prong of the Central Hudson test, the Court had not been asked to consider the applicability of Discovery Network and its mandate that restrictions on commercial speech cannot be upheld if they do not advance the government's asserted interest in enacting them nor whether less restrictive means were available. Indeed, the Southlake court expressly noted:

15

>Southlake does not raise on appeal any challenge to the ordinance based on the other three Central Hudson factors [i.e., (1) that it concerns lawful activity and is not misleading; (3) directly advances that interest; and (4) reaches no further than necessary to accomplish the given objective.]

Id. at 1116 n.5.

The City of Wilton Manors cannot establish that any perceived evils from sign structures could not be addressed by restricting the location, dimensions or number of advertising sign structures per lot without regard to whether they advertised on-premise or off-premise activities. Plainly, such obvious alternatives, if efficacious, would be much less burdensome on the important First Amendment expressive activity that the City bans outright. See Greater New Orleans Broad. Ass'n, Inc. v. United States, 527 U,S. 173, 144 L. Ed.2d 161, 119 S.Ct. 1923 (1999), holding unconstitutional a state regulation that prohibited private casino advertising while permitting a variety of other advertising that posed the same risks the Government purported to fear.

## CONCLUSION

The 1997 City of Wilton Manors sign ordinance was unconstitutional in it entirety. The 2000 amendatory legislation cannot affect the substantive rights of SIS to erect the signage sought by it at a time when no valid ordinance existed regulating the construction of outdoor advertising signs within the municipality. In any event, the amendatory legislation is invalid under the First and Fourteenth Amendments to the United States Constitution for it fails to target an identifiable harm and mitigate against such harm in a direct and material manner.

Respectfully submitted,

Gary R. Rutledge
Florida Bar No. 222674
John R. Ellis
Florida Bar No. 041976
Rutledge, Ecenia, Purnell & Hoffman, P.A.
P. O. Box 551
Tallahassee, Florida 32302
(850) 681-6788 (Telephone)
(850) 681-6515 (Telecopier)

and

Myron D. Cohen
Hunton & Williams
200 Park Avenue
New York, New York 10166
(212) 309-1000 (Telephone)
(212) 309-1100 (Telecopier)

Attorneys for Plaintiff,
Willton Manor Street Systems, Inc.

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Plaintiff Wilton Manors Street Systems, Inc.'s Motion for Summary Judgment was served by U. S. mail this 24th day of August, 2000, to the following:

Michael T. Burke, Esq.
Johnson, Anselmo, Murdoch, Burke
& George
790 East Broward Boulevard, Suite 400
P. O. Box 030220
Fort Lauderdale, FL 33303-0220

John R. Ellis

F:\USERS\JELLIS\street.summary