UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6186-CIV-UNGARO-BENAGES

WILTON MANORS STREET SYSTEMS, INC.,

    Plaintiff,

vs.

CITY OF WILTON MANORS,

    Defendant.
_____/

**NIGHT BOX RECEIVED AUG 2 5 2000**

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

### DEFENDANT, CITY OF WILTON MANORS', MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Defendant, CITY OF WILTON MANORS ("CITY" or "Defendant"), by and through its undersigned attorneys and pursuant to Local Rule 7.5, submits its Memorandum of Law in Support of the Defendant, CITY'S, Motion for Summary Judgment and states as follows:

Plaintiff, WILTON MANORS STREET SYSTEMS, INC., ("WMSS", or "Plaintiff") brings this action against the CITY in connection with alleged violations of Plaintiff's free speech rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

The Defendant, CITY, is entitled to Summary judgment as to Plaintiff's claims under the First and Fourteenth Amendment to the United States Constitution for the reasons discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The CITY adopted a sign ordinance on May 27, 1997, by passage of Ordinance No: Z-199 and it was amended on February 10, 1998, by Ordinance No: Z-205. For purposes of this

1

Case 0:00-cv-06186-UU   Document 26   Entered on FLSD Docket 08/28/2000   Page 2 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

Memorandum, the sign ordinance in existence on or after the adoption of Ordinance No: Z-205, and as challenged by Plaintiff, WILTON MANORS STREET SYSTEMS, INC., ("WMSS") in this action, will be referred to as the "1997 Sign Code."

The 1997 Sign Code established height, size, number and frontage restrictions for specified permanent and temporary "on-premises" signs, while it prohibited "off-premises" signs with the exception of specified temporary "off-premises" signs. The 1997 Sign Code did not define "on-premises" or "off-premises" signs. The effect and intent of the 1997 Sign Code was to place reasonable height, size and number restrictions on signs permitted regardless of their content in order to facilitate the health, safety and welfare of the public and to encourage architecturally compatible signs which efficiently transfer information.

The City Commission in October of 1999, initiated a review of the 1997 Sign Code to reexamine the 1997 Sign Code's compliance with the First and Fourteenth Amendments to the Constitution of the United States. Subsequently, the Commission considered and recommended amendments to the 1997 Sign Code to the City Commission. On or about January 25, 2000, CITY passed and adopted Ordinance No: Z-212 (the "2000 Sign Code") on its first reading and again on February 8, 2000, on its second reading. The purpose of Ordinance No: Z-212 was to clarify and emphasize CITY'S intent that its sign code be interpreted and applied in a content-neutral manner and to regulate off premises commercial speech. The 2000 Ordinance amended the 1997 Sign Code.

On February 4, 2000, Plaintiff filed its Complaint. On June 8, 2000, Plaintiff filed an Amended Complaint, which seeks declaratory and injunctive relief and contend that CITY'S 1997

Case 0:00-cv-06186-UU   Document 26   Entered on FLSD Docket 08/28/2000   Page 3 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wlton Manors Street Systems, Inc. vs. City of Wilton Manors

Sign Code violates the First and Fourteenth Amendments. Plaintiff's Amended Complaint does not challenge the validity of the 2000 Sign Code, nor has Plaintiff moved to amend it to assert any claims based upon the 2000 Sign Code.

Essentially, Plaintiff requests that this Court enter a declaratory judgment invaliding on federal constitutional grounds the 1997 Sign Code in its entirety. Indeed, Plaintiff even requests that the Court invalidate the CITY's content neutral size, height, frontage and number regulations. This drastic remedy is sought in order to provide some legal justification for Plaintiff's desire to erect six large outdoor advertising structures within the City of Wilton Manors.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Courts are also guided in determining whether the moving party is entitled to judgment as a matter of law by the clarification of the summary judgment standard articulated by the Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986) which makes clear that the non-moving party may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Case 0:00-cv-06186-UU   Document 26   Entered on FLSD Docket 08/28/2000   Page 4 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

> Nor are judges any longer required to submit a question to a [fact finder] merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the [fact finder] in finding a verdict in favor of that party. Formerly, it was held that if there was what is called a <u>scintilla</u> of evidence in support of a case, the judge was bound to leave it to the [fact finder], but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the [fact finder], there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any evidence upon which the [fact finder] could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

Anderson, 477 U.S. at 248 (underling in the original).

Accordingly, issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." Anderson, 477 U.S. at 249. Summary judgment is particularly applicable in matters such as the one currently before this Court. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 322.

### III. ARGUMENT

WMSS's Amended Complaint facially challenges the validity and constitutionality of the 1997 Sign Code under the First and Fourteenth Amendments, and seeks declaratory and injunctive relief precluding its enforcement. (Amended Complaint, para. 1). The Amended Complaint sets forth the following grounds for WMSS's claim.

    a.    The 1997 Sign Code impermissibly distinguishes between on-premise and off-premise signage solely by a subjective examination of the content of the wording of each sign" (Amended Complaint, para. 14-17);

4

Case 0:00-cv-06186-UU   Document 26   Entered on FLSD Docket 08/28/2000   Page 5 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wlton Manors Street Systems, Inc. vs. City of Wilton Manors

    b.    the 1997 Sign Code impermissibly favors commercial on-premise advertising over both on-premise and off-premise non-commercial advertising(Amended Complaint, para. 14-17).

    c.    the 1997 Sign Code impermissibly permits unbridled government discretion in determining whether a sign is an appropriate commercial, as opposed to a non-commercial sign, (Amended Complaint, para. 28-29); and

    d.    the 1997 Sign Code impermissibly favors certain forms of commercial and political speech over others (Amended Complaint, para. 26-27).

However, the offending portions of the 1997 Sign Code have been repealed or otherwise amended such that those sections WMSS alleges to be unconstitutional either no longer exist or have been amended to remove any alleged constitutional infirmity. The pertinent amendments to the 1997 Sign Code are, as follows:

    11-1    PURPOSE

    D.    To create an aesthetic and enjoyable appearance for city visitors and residents.

    E.    To safeguard and enhance property values within the community.

    F.    To preserve the beauty and unique character of the city.

    G.    To promote pedestrian and traffic safety.

Any sign containing noncommercial copy shall be deemed an on-premises sign, and any sign authorized in this article is allowed to contain noncommercial copy in lieu of any other copy.
Section 2.    That Section 11-5(B) of Article 11 of the Zoning Ordinance of the City of Wilton Manors, titled "Schedule 3, Schedule of Requirements for Temporary Signs" is hereby amended to add an additional sixth Category to the five categories of temporary signs already contained therein, to read as follows:

6.    Category:    Political Signs

        Number:    Maximum of two signs per property

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wlton Manors Street Systems, Inc. vs. City of Wilton Manors

| | |
|---|---|
| Sign Area: | Maximum area per sign: Thirty-two (32) square feet; |
| | Maximum height per sign: Fifteen (15) feet; Total area of all signs on one property; |
| | One square foot per foot of street frontage, not to exceed one hundred (100) square feet per property. |
| Time Period: | Political signs, pertaining to a time, event purpose which is no longer imminent or pending shall be removed within seven days subsequent to said time or event. |
| Special Conditions: | N/A |

Because the 1997 Sign Code has been amended to remove those sections of the 1997 Sign Code which WMSS has challenged, and no reasonable expectation exists that such alleged infirmities will be re-enacted by CITY, WMSS's Amended Complaint does not assert a live case or controversy upon which this Court can fashion a meaningful remedy. Therefore, CITY is entitled to summary judgment as to all aspects of WMSS's Amended Complaint.

### A. ENACTMENT OF THE 2000 SIGN CODE RENDERS THE PLAINTIFF'S ACTION MOOT

WMSS's claims are moot based on the CITY's subsequent enactment of the 2000 Sign Code. Revolution Outdoor Advertising, Inc. v. City of Casselberry, 6:98-cv-1344-ORL-18C (M.D. Fla. 2000) (the "Revolution Order").[1] A copy of the Revolution Order is attached as

---

[1] The Honorable G. Kendall Sharp's, Senior United States District Judge, Middle District of Florida, opinion in Revolution, was unpublished. However, pursuant to 11th Cir. R.36-2, unpublished opinions "may be cited as persuasive authority, provided that a copy of the unpublished opinion is attached to or incorporated within the brief,"... . Rule 36-2, Eleventh Circuit Rules.

Exhibit A. Here, WMSS is seeking injunctive relief based on claimed challenges to the 1997 Sign Code. (Amended Complaint, para. 11). However, as articulated, *supra*, the 1997 Sign Code was amended to remove the portions challenged by WMSS. As a result, it is clear WMSS's claims are moot.

> At every stage in the proceedings, the court must "stop, look, and listen" to determine the impact of changes in the law on the case before it... . Where a law **is amended so as to remove its challenged features**, the claim for **injunctive relief becomes moot** as to those features. Thus, a superseding statute or regulation moots a case to the extent it removes challenged features of the prior law.
>
> Naturist Society, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992) (emphasis added), *quoting*, Kremens v. Bartley, 431 U.S. 119, 135 (1977).

*(see also,* 15 Moore's Federal Practice § 101.98 (3rd ed. 1999), and cases cited therein; Crosby v. Hospital Authority of Valdosta and Lowndes County, 93 F.3d 1515, 1533-34 (11th Cir. 1996).

Established law dictates that it is impossible for this Court to fashion any injunctive relief for challenged features of an ordinance which no longer exist, i.e., the 1997 Sign Code, and, therefore, further demonstrate that WMSS's claims are clearly moot. A claim for injunctive relief "'operates *in futuro,*'" Landgraf v. USI Film Products, 511 U.S. 244 (1994), and thus "[L]ogically, 'a prospective remedy will provide no relief for an inquiry that is, and likely will remain, entirely in the past.'" Crosby, 93 F.3d at 1533. "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief". Jews for Jesus v. Hillsborough County Aviation Authority, 162 F.3d 627, 629 (11th Cir. 1998). A ruling or judgment by a court on a former or non-existent statute would provide no meaningful relief.

7

Case 0:00-cv-06186-UU   Document 26   Entered on FLSD Docket 08/28/2000   Page 8 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

"[A] declaratory judgment on the validity of a repealed ordinance is a textbook example of 'advising what the law would be upon a hypothetical state of facts.'" National Advertising Co. v. City and County of Denver, 912 F.2d 405, 412 (10th Cir. 1990).

Simply put, this Court, regardless of the date the 2000 Sign Code became effective, is not required to make a meaningless retrospective analysis of the challenged portions of a code or ordinance which no longer exist, i.e., the 1997 Sign Code.

> [When considering the validity of any statute or ordinance] [A] court should 'apply the law in effect at the time it renders its decision,' even though that law was enacted after the events that gave rise to the suit.
>
> Landgraf, 128 L.Ed. 2d at 257, *quoting* Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 711 (199 ).

Revolution is virtually indistinguishable from this case and is instructive.[2] In Revolution, the plaintiff, like WMSS, was an outdoor advertising company whose applications for billboards were denied under a sign ordinance enacted in 1992 (the "1992 Casselberry Ordinance"). The plaintiff filed a complaint challenging the constitutionality of the 1992 Casselberry Ordinance on grounds identical to those pursued by WMSS in this action. Approximately three months after the plaintiff filed its complaint, the City of Casselberry amended the 1992 Ordinance such that the sections challenged by the plaintiff either no longer

---

[2] Counsel for WMSS, Myron Cohen, is also counsel for the plaintiff in Revolution. Pursuant to Mr. Cohen's own statement in his Mediation Memorandum, the cases are very similar. *See*, Plaintiff's Mediation Memorandum, p. 5, fn. 3.

Case 0:00-cv-06186-UU    Document 26    Entered on FLSD Docket 08/28/2000    Page 9 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

existed or were amended to remove any alleged constitutional infirmity pursuant to the Supreme Court's holding in Metromedia v. City of San Diego, 453 U.S. 490 (1981). The City of Casselberry moved for summary judgment "on the ground that its sign ordinance amendments render this [the Plaintiff's] action moot." The Revolution Order, p.2. After reviewing all the evidence, the 1992 Casselberry Ordinance, and the amendments thereto, the Honorable G. Kendell Sharp, Senior United States District Judge, United States District Court for the Middle District of Florida, agreed, and determined the Plaintiff's action was, in fact, moot. The Revolution Order, p. 7.

As demonstrated, the facts and circumstances, up to and including counsel for Plaintiff, in Revolution are identical to those in this matter. The City of Wilton Manors has, likewise, amended the 1997 Sign Ordinance by removing any alleged constitutional infirmity. Accordingly, WMSS's action, alleging challenges to the 1997 Sign Code, is also moot and summary judgment should be granted in favor of the CITY.

While it will not avail WMSS in this matter, CITY acknowledges courts have determined that practical considerations require the adaptation of certain exceptions to the "mootness" doctrine. Most notably, the Eleventh Circuit has held that a defendant's voluntary cessation of a challenged practice will render a "case moot only if there is no 'reasonable expectation' that the challenged practice will resume after the lawsuit is dismissed." Jews for Jesus, 162 F.3d at 629. However, it has been determined the "reasonable expectation that the challenged practice will resume" component of the voluntary cessation exception requires a demonstration by the plaintiff

of something more that the mere possibility or potentiality that the challenged practice will resume.

> 'The mere power to reenact a challenged law,' however, 'is not a sufficient basis on which a court can conclude that a reasonable expectation of a recurrence exists. Rather, there must be evidence indicating that the challenged law likely, **or perhaps almost certainly**, will be reenacted.'
>
> The Revolution Order, pp.5-6 (emphasis added), *quoting and citing*, 15 Moore's Federal Practice §101.98 at 181-185 (3rd ed. 1999)(emphasis added).
>
> *Aladdin's Castle* can best be characterized as an example of the 'voluntary cessation' exception to the general rule that legislative repeal of a statute renders a case moot.... This exception properly applies **only** when a recalcitrant legislature **clearly intends** to reenact the challenged regulation. [T]he record before us is devoid of any **expressed intention** by the Kentucky General Assembly to reenact the prior legislative scheme.
>
> Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637, 645 (6th Cir. 1997)(emphasis added).

In Revolution, Senior Judge Sharp determined the actions of the City of Casselberry, in "voluntarily initiati[ing] a review of its 1992 Ordinance...."[3] and engaging in "substantial deliberation" before enacting its current ordinance, went further than merely demonstrating no reasonable expectation existed that the City of Casselberry intended to reinstate the challenged

---

[3] The court found the City of Casselberry took "voluntary review" of the 1992 Ordinance even though it was not effectively enacted until several months after the filing of the Plaintiff's complaint. Here, CITY actually performed the review of its ordinance and effectively enacted the 2000 Sign Code before the filing of WMSS's Amended Complaint.

ordinance. The Revolution Order, p. 7.[4] Rather, in granting the summary judgment, he ruled those actions demonstrated a **clear intent not to reinstate** the challenged ordinance. ("Instead, the evidence establishes just the opposite.") Id.

Similarly, when notified of the potentially problematic aspects of the 1997 Sign Code, CITY voluntarily initiated a review of that ordinance and, after several months of "substantial deliberation", enacted the 2000 Sign Code which operated to eradicate any potential constitutional infirmities existing in the 1997 Sign Code. Following this logic, CITY has also clearly demonstrated its intention not to readopt or reinstate any "constitutionally challenged" portion of the 1997 Sign Code and, thus, WMSS cannot salvage its moot action by virtue of the reasonable expectation exception.

Likewise, in Jews for Jesus, the Eleventh Circuit found that the governmental entity repealed its prohibition on the distribution of literature at the Tampa International Airport one month after commencement of the lawsuit and held that, "[B]ecause there is no [demonstrated] reason to think that the airport will change its policy at the conclusion of this lawsuit" the plaintiff's case was moot. Id. At 629. *But see*, City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 102 S.Ct.1070, 71 L.Ed 2d 152 (1982)(declining to apply the principle of mootness

---

[4] The City of Casselberry had also adopted a formal resolution that it would not, basically, readopt any of the 1992 Ordinance which allegedly created a constitutional infirmity. However, any such resolution is a nullity in the law and merely reflects the intent of the city. Likewise, CITY represents that it will not reenact or readopt any portion of the 1997 Sign Code that allegedly creates a constitutional infirmity.

11

based upon the Court's **express finding** that the city had announced its intention to re-enact the challenged statute). Id. at 289 n. 11(emphasis added); Naturist Society, Inc. v. Fillyaw, 958 F.2d 1515 (11th Cir. 1992)(declining to apply the principle of mootness because "[T]his case manifests a '**demonstrated probability** that the same controversy will recur, involving the same complaining party'") Id. at 1520-21(emphasis added); *accord*, National Advertising Co. v. City of Fort Lauderdale, 934 F.2d 283, 286 (11th Cir. 1991).

WMSS has presented **no evidence, whatsoever**, that CITY intends to reenact or readopt any offending portions of the 1997 Sign Code. This dearth of pertinent evidence is due to the fact none exists. Accordingly, this case is analogous to, and guided by the holdings of, Revolution, Jews for Jesus and Terry. Moreover, it is clearly distinguishable from those in City of Mesquite, Naturist Society and Fort Lauderdale. In the absence of any showing that the challenged practice will be resumed, this Court is not presented with a live controversy on which to fashion relief. United States Constitution, art. III, § 2; Jews for Jesus, 162 F.3d at 629.

Based on these tenants, WMSS is limited to a challenge of the 2000 Sign Code. It is inarguable that WMSS has not challenged it in any way. As a result, WMSS's claim for relief from the 1997 Sign Code is moot, i.e., any alleged injury to WMSS is in the past and no "reasonable expectation" of recurrence exists. For these reasons, CITY is entitled to summary judgment. Because CITY amended its sign ordinance before WMSS even filed its action, WMSS cannot be considered the prevailing party or catalyst such that it is entitled to any award of attorneys' fees.

Case 0:00-cv-06186-UU   Document 26   Entered on FLSD Docket 08/28/2000   Page 13 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

> An unfortunate result of the very worthy purpose of Section 1988 is that plaintiffs' counsel cannot obtain fees unless the plaintiff prevails in an 'action or proceeding to enforce' one of the civil rights statutes. **A lawsuit must be filed before a plaintiff can become eligible for attorney's fees**.
>
> Snyder v. Shearer, 575 F.Supp. 156, 158 (S.D. Iowa 1983) *quoting* 42 U.S.C. §1988 (emphasis added).

Here, WMSS's action was moot before the lawsuit was filed by virtue of the CITY's passage of the 2000 Sign Code on January 25, 2000. As a result, WMSS cannot meet the requirement that a valid "lawsuit must be filed" in order for the plaintiff to even become eligible to recover attorneys' fees. Moreover, WMSS's claim for attorneys' fees cannot be salvaged by any claim that its pre-suit efforts, and CITY's subsequent amendment of the 1997 Sign Code, elevated it to the status of prevailing catalyst.[5] "A lawsuit must be filed before a plaintiff can become eligible for attorney's fees. So, [in fact] section 1988... discourages the lawyers from entering into settlement negotiations until a lawsuit is on file. Id. Thus, any such claim must be rejected or, at most, WMSS is limited to claim only those attorneys' fees incurred after the filing of its action.

---

[5] CITY acknowledges that WMSS would, arguably, be entitled to attorneys' fees as a prevailing catalyst if the action had been pending and WMSS's efforts had brought about a vindication of its rights, notwithstanding the action being mooted by subsequent remedial action of the CITY. Doe v. Busbee, 684 F.2d 1375 (11th Cir. 1982). However, such a scenario is completely distinguishable from this case, i.e., the action was moot before it was ever filed.

## B. CONSTITUTIONALITY OF THE 2000 SIGN CODE

As demonstrated immediately, *supra*, WMSS's claims are moot as to the 1997 Sign Code. Significantly, WMSS has not challenged the 2000 Sign Code. As a result, CITY is entitled to summary judgment. However, any potential challenge to the 2000 Sign Code will also fail because it specifically complies with the Supreme Court's decision in Metromedia, 453 U.S. 490 (1981)( A municipality may regulate or prohibit signs or billboards for aesthetic purposes). Id. at 510.

In Metromedia, the Supreme Court determined, among other things, that a municipality may distinguish between commercial, on-premises signs and commercial, off-premises signs by regulating or banning off-premises signs to a greater degree than on-premises signs and that any such regulation properly advances aesthetic and safety interests. Id. at 511-12.

CITY's ordinance is not broader than necessary to achieve its stated purpose. As the Court in Metromedia stated:

> If the city has a sufficient basis for believing that billboards are...unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems that they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows on-site advertising and some other specifically exempted signs.

>     Metromedia at 508.

Like the City of San Diego in Metromedia, CITY has gone no further than necessary to achieve its ends. Indeed, by not prohibiting all outdoor signage, the CITY has stopped short of

14

Case 0:00-cv-06186-UU    Document 26    Entered on FLSD Docket 08/28/2000    Page 15 of 19

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

fully accomplishing its ends. Outdoor Systems, Inc. v. City of Mesa, 997 F.2d 604, 611 (9th Cir. 1993). Accordingly, the 2000 Sign Code specifically complies with the law and its efficacy is evinced by WMSS's complete failure to challenge it despite every opportunity to do so.

### C. SEVERABILITY OF PORTIONS OF THE 1997 SIGN CODE

As articulated above, it is clear WMSS's claims as to the 1997 Sign Code are moot. However, assuming, *arrguendo*, this court decides to somehow revive the 1997 Sign Code, and subject it to constitutional scrutiny, the challenged portions are severable and the remaining portions will pass constitutional muster.

Severability of a local ordinance is a question of state law. City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750 (1988). The Florida Supreme Court has proclaimed the affirmative duty of the courts to preserve the validity of the remaining portions of an enactment, unless the court can conclude either that the legislative body would not have enacted the regulation without the invalid portions or that the resulting altered enactment is "nonsensical." Small v. Sun Oil Co., 222 So.2d 196, 199 (Fla. 1969); Schmidt v. State, 590 So.2d 404, 415 (Fla. 1991). The proper inquiry is to determine whether the unconstitutional provisions can be ... separated from the remaining valid provisions; the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and the bad features are not [so] inseparable...[in substance] that it can be said that the Legislature would have passed the one without the other; and an act complete in itself remains after the invalid

15

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

provisions are stricken. <u>Moreau v. Lewis</u>, 648 So.2d 124, 128 (Fla. 1995), *citing* <u>Presbyterian Homes v. Wood</u>, 297 So.2d 556, 559 (Fla. 1974).

The Sign Code provides, in pertinent part:

ARTICLE 11. SIGN REGULATIONS

11-3. D.      Pole Signs. (detached, pylon and/or free-standing).

4.      Pole sign regulations: New and existing pole signs shall conform with the following regulations:

# SEE ATTACHED SCHEDULE 1

SCHEDULE 1.

POLE SIGN REGULATIONS

| Location Criteria | Max. Sign Area-(sq.ft.) | Max. Number Per Site | Max. Height | Setback |
|---|---|---|---|---|
| Meet any one of the below site criteria:<br>**1. 300 ft. of frontage**<br><br>2. Occupies 50% or more of the block. | 128 sq.ft.agg.<br><br>64 sq.ft 1 side | 1 per street frontage regardless of the number of uses on site. | **16 ft. to top of sign.**<br>If in corner line of site then 8 ft. clear ht. 14 ft. clear ht. If over a parking space or traffic lane. | 7 ft. to leading edge of sign. |

Here, Plaintiff's applications clearly violated these valid restrictions in that they sought pole signs which (i) only utilized 150 feet of frontage, (ii) were between 50 and 75 feet in height, and (iii) were at least 672 square feet in area. All of which violated the sign code.

As demonstrated, the denials were based on provisions that could be effectively separated from the remaining valid provisions. The CITY's purpose of regulating or prohibiting signs or billboards for aesthetic and safety purposes is still accomplished. Moreover, even without the stricken provisions, the remaining portions would allow the CITY to maintain the ability, albeit within the confines established in <u>Metromedia</u>, to continue regulating billboards for the good of its citizenry. Moreover, even after striking the offending portions, the remainder of the ordinance would still effectuate the purpose enumerated in the preamble.

The 1997 Sign Code itself provides possibly the best evidence that the City Council of Wilton Manors would have enacted the surviving provisions, i.e., it contained a severability clause. 1997 Sign Code, Sec. 11-8 C.4. This inclusion reflects the City Council contemplated, and even provided for the possibility, that some of the provisions of the 1997 Sign Ordinance might be invalidated and, as such, its intent that the remaining portions would remain in effect. As the Florida Supreme Court stated in <u>Moreau</u>:

> [When reviewing a legislative act containing a severability clause] [a]lbeit not binding, legislatively expressed preference for the severability of a voided provision is persuasive.

> <u>Moreau</u> at 128.

As demonstrated, even assuming this Court will engage in a review of the 1997 Sign Code, it is clear the challenged provisions are severable from the remaining, effective portions of the ordinance.

CASE NO. 00-6186-CIV-UNGARO-BENAGES
Wilton Manors Street Systems, Inc. vs. City of Wilton Manors

## IV. CONCLUSION

Plaintiff's claims for declaratory and injunctive relief related to the 1997 Sign Code are moot and fail to present a justiciable controversy. The CITY's enactment of the 2000 Sign Code repeals or otherwise remedies the challenged portions of the 1997 Sign Code and there is no reasonable expectation that the CITY will reinstate the challenged features of the 1997 Code.

To the extent any federal justiciable issue remains concerning the denial of Plaintiff's sign permit applications pursuant to the 1997 Code, the record affirmatively establishes that the applications sought to erect outdoor advertising structures which far exceeded the size, height and frontage requirements of the 1997 Code. These content neutral size, height and frontage limitations are clearly valid and severable from any challenged portions of the 1997 Sign Code.

Finally, although not challenged by the Plaintiff, the 2000 Sign Code is not violative of the First or Fourteenth Amendments to the United States Constitution. It does not favor commercial over non-commercial speech and sets forth a valid regulatory scheme for the erection of outdoor advertising structures and signage within the CITY.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to **GARY R. RUTLEDGE, ESQUIRE**, Rutledge, Ecenia, Purnell & Hoffman, Attorneys for Plaintiff, 215 So. Monroe Street, Ste. 420, Tallahassee, FL 32301-1841, and

```
                                        CASE NO. 00-6186-CIV-UNGARO-BENAGES
                          Wlton Manors Street Systems, Inc. vs. City of Wilton Manors
```

**MYRON D. COHEN, ESQUIRE**, Hunton & Williams, Co-Counsel for Plaintiff, 200 Park Avenue, New York, NY 10166-0136, this 25th day of August, 2000.

JOHNSON, ANSELMO, MURDOCH, BURKE & GEORGE
**Attorneys for City of Wilton Manors**
790 East Broward Boulevard, Suite 400
Post Office Box 030220
Fort Lauderdale, Florida 33303-0220
Facsimile:   954/463-2444
Telephone:  954/463-0100 Broward
            305/945-2000 Dade
            561/640-7448 WPB

BY: _____
MICHAEL T. BURKE
Florida Bar No. 338771
WILLIAM H. BEAVER
Florida Bar No. 869007