

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6186-CIV-UNGARO-BENAGES

WILTON MANORS STREET SYSTEMS, INC.,

      Plaintiff,

vs.

CITY OF WILTON MANORS,

      Defendant.

_____/

**DEFENDANT, CITY OF WILTON MANORS', MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      The Defendant, CITY OF WILTON MANORS ("CITY" or "Defendant"), by and through

its undersigned attorneys and pursuant to Local Rule 7.5, submits its Memorandum of Law in

Opposition to Plaintiff, Wilton Manors Street Systems, Inc. ("WMSS"), Motion for Summary

Judgment (the "Plaintiff's Motion") and states as follows:

**MEMORANDUM OF LAW**

**1.  THE ORDINANCE CHALLENGED BY WMSS DID NOT EXIST WHEN IT
FILED THIS ACTION AND THEREFORE ANY SUCH ACTION IS MOOT**

      The gravamen of Plaintiff's Motion, and the underlying action, is a challenge to the Wilton

Manors sign ordinance in effect from May 27, 1997 through January 24, 2000.[1]  However, any such

_____

[1]

  On January 25, 2000, Wilton Manors passed and adopted Ordinance No: Z-212 which amended the
1997 Sign Code (the "2000 Sign Code").  It is important to note that WMSS's action was not filed
until February 4, 2000.  Accordingly, WMSS filed this action with knowledge or record notice that
the 1997 Sign Code was no longer in existence.

argument or action is moot based on the CITY's timely enactment of the 2000 Sign Code. Revolution Outdoor Advertising, Inc. v. City of Casselberry, 6:98-cv-1344-ORL-18C (M.D. Fla. 2000) (the "Revolution Order"). [2] A copy of the Revolution Order is attached as Exhibit A. Here, WMSS is seeking injunctive relief based on claimed challenges to the 1997 Sign Code. (Amended Complaint, para. 11). However, as articulated in footnote 1, the 1997 Sign Code was amended to remove the portions challenged by WMSS and this was accomplished even **before WMSS filed the present action**. As a result, it is clear WMSS's claims are moot.

> At every stage in the proceedings, the court must "stop, look, and listen" to determine the impact of changes in the law on the case before it... . Where a law is **amended so as to remove its challenged features**, the claim for **injunctive** relief **becomes moot** as to those features. Thus, **a superseding statute or regulation moots a case** to the extent it removes challenged features of the prior law.
>
> Naturist Society, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992) (emphasis added), *quoting*, Kremens v. Bartley, 431 U.S. 119, 135 (1977).

*(see also*, 15 Moore's Federal Practice § 101.98 (3rd ed. 1999), and cases cited therein; Crosby v. Hospital Authority of Valdosta and Lowndes County, 93 F.3d 1515, 1533-34 (11th Cir. 1996).

Established law dictates that it is impossible for this Court to fashion any injunctive relief for challenged features of an ordinance which did not exist at the time the action was filed and no longer exists, i.e., the 1997 Sign Code. A claim for injunctive relief "'operates *in futuro*,'" Landgraf

---

[2]

The Honorable G. Kendall Sharp's, Senior United States District Judge, Middle District of Florida, opinion in Revolution, was unpublished. However, pursuant to 11th Cir. R.36-2, unpublished opinions "may be cited as persuasive authority, provided that a copy of the unpublished opinion is attached to or incorporated within the brief,"... . Rule 36-2, Eleventh Circuit Rules.

v. USI Film Products, 511 U.S. 244 (1994). "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief". Jews for Jesus v. Hillsborough County Aviation Authority, 162 F.3d 627, 629 (11th Cir. 1998). A ruling or judgment by a court on a former or non-existent statute would provide no meaningful relief. "[A] declaratory judgment on the validity of a repealed ordinance is a textbook example of 'advising what the law would be upon a hypothetical state of facts.'" National Advertising Co. v. City and County of Denver, 912 F.2d 405, 412 (10th Cir. 1990).

As demonstrated in CITY's Memorandum of Law In Support of Motion for Summary Judgment, Revolution is virtually indistinguishable from this case and that decision reveals WMSS's action is moot regardless of when the 2000 Sign Code was passed. [3]  In Revolution, the City of Casselberry did not amend its ordinance or sign code to remove any alleged constitutional infirmity until approximately **three months after the plaintiff filed its complaint**.   However, the City of Casselberry moved for summary judgment "on the ground that its sign ordinance amendments render this [the Plaintiff's] action moot." The Revolution Order, p.2. After reviewing all the evidence, the challenged Casselberry Ordinance, and the amendments thereto, the Honorable G. Kendell Sharp, Senior United States District Judge, United States District Court for the Middle District of Florida, agreed, and determined the Plaintiff's action was, in fact, moot. The Revolution Order, p. 7.

---

[3] Counsel for WMSS, Myron Cohen, is also counsel for the plaintiff in Revolution. Pursuant to Mr. Cohen's own statement in his Mediation Memorandum, the cases are very similar. *See*, Plaintiff's Mediation Memorandum, p. 5, fn. 3.

Case No. 00-6186-Civ-Ungaro-Benages
Wilton Manors Street Systems vs. City of Wilton Manors

The only real distinction between <u>Revolution</u> and this case is that WMSS's action enjoys even less consideration and protection than the defendant in <u>Revolution</u>. Wilton Manors, unlike the Defendant in <u>Revolution</u>, actually amended the 1997 Sign Ordinance, and removed any alleged constitutional infirmity, **before WMSS filed its action**. Accordingly, WMSS's action, alleging challenges to only the 1997 Sign Code, was moot on the date it was filed.

Despite these clear edicts of controlling case law, WMSS attempts to bolster its wholly insufficient Motion for Summary Judgment by citing certain cases and improperly asserting they stand for the proposition that amendment of a statute and removal of challenged portions will not moot the underlying action. However, despite convenient omission by WMSS of any such acknowledgment, those cases merely recognize that, under **certain circumstances**, an exception to the "mootness" doctrine, i.e., the voluntary cessation exception, may exist. Moreover, WMSS further obfuscates those holdings by also conveniently failing to articulate and analyze the primary component required for that exception to apply, i.e., some demonstrated evidence which reflects a "reasonable expectation" that the challenged practice will resume after dismissal of the action.

A fair and accurate review of the cases cited by WMSS, and other pertinent caselaw, merely indicate that a defendant's voluntary cessation of a challenged practice will not **necessarily** render a case moot. *see*, <u>Jews for Jesus</u>, 162 F.3d at 629. However, the Eleventh Circuit has clearly stated that "if there is no 'reasonable expectation' that the challenged practice will resume after the lawsuit is dismissed" the **action is moot**. <u>Id</u>. *see also*, <u>Kentucky Right to Life, Inc. v. Terry</u>, 108 F.3d 637

-4-

(6th Cir. 1997)("This exception [voluntary cessation] applies **only** when a recalcitrant legislature **clearly intends** to reenact the challenged regulation.") Id. at 645. (emphasis added.)

Here, WMSS principally relies on National Adver. Co. v. City of Fort Lauderdale, 934 F.2d 283 (11th Cir. 1991) and City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 102 S.Ct.1070, 71 L.Ed 2d 152 (1982) for the proposition that amending and removing challenged provisions of a statute or ordinance will not moot the underlying action. The Plaintiff's Motion, pp. 11-13. However, such reliance is misplaced because these decisions were reached **only** after a determination that the challenged statute would probably, if not certainly, be reenacted. City of Fort Lauderdale, 934 F.2d 283 (11th Cir. 1991)(finding nothing in the record to refute the likelihood of a return to the challenged practices); Aladdin's Castle, (declining to apply the principle of mootness based upon the Court's **express finding** that the city had announced **its intention to re-enact the challenged statute**). Id. at 289 n. 11(emphasis added); *see also* Naturist Society, Inc. v. Fillyaw, 958 F.2d 1515 (11th Cir. 1992)(declining to apply the principle of mootness because "[T]his case manifests a '**demonstrated probability** that the same controversy will recur, involving the same complaining party'") Id. at 1520-21(emphasis added.)

In Revolution, Senior Judge Sharp determined the actions of the City of Casselberry, in "voluntarily initiati[ing] a review of its 1992 Ordinance... ."[4] and engaging in "substantial

---

[4] The court found the City of Casselberry took "voluntary review" of the 1992 Ordinance even though it was not effectively enacted until several months after the filing of the Plaintiff's complaint. Here, CITY actually performed the review of its ordinance and effectively enacted the 2000 Sign Code before the filing of WMSS's Amended Complaint.

-5-

deliberation" before enacting its current ordinance, **went further** than merely demonstrating no reasonable expectation existed that the City of Casselberry intended to reinstate the challenged ordinance. The Revolution Order, p. 7. Rather, in granting the summary judgment, he ruled those actions demonstrated a **clear intent not to reinstate** the challenged ordinance. ("Instead, the evidence establishes just the opposite.") Id.

Similarly, when notified of the potentially problematic aspects of the 1997 Sign Code, CITY voluntarily initiated a review of that ordinance and, after several months of "substantial deliberation", enacted the 2000 Sign Code which operated to eradicate any alleged constitutional infirmities existing in the 1997 Sign Code. Moreover, CITY enacted the 2000 Sign Code even before litigation had been initiated against it. Certainly, such action displays clear intent by CITY to effectuate this policy and goes even further than the defendants in Revolution and the cases cited *supra*, in that CITY acted without requiring Plaintiff to actually file any action. Following this logic, CITY has also clearly demonstrated its intention not to readopt or reinstate any "constitutionally challenged" portion of the 1997 Sign Code. Accordingly, WMSS cannot salvage its moot action because no reasonable expectation of re-enactment exists and therefore the voluntary cessation exception is not applicable.

Likewise, in Jews for Jesus, the Eleventh Circuit found that the governmental entity repealed its prohibition on the distribution of literature at the Tampa International Airport **one month after commencement of the lawsuit** and held that, "[B]ecause there is no [demonstrated] reason to think

that the airport will change its policy at the conclusion of this lawsuit" the plaintiff's case was moot. Id. At 629.

In direct contrast to Wilton Manors' evidence that it will not reenact the requested ordinance, WMSS has presented **no evidence, whatsoever,** that CITY intends to reenact or readopt any offending portions of the 1997 Sign Code. This dearth of pertinent evidence is due to the fact none exists. Accordingly, this case is analogous to, and guided by the holdings of, Revolution, Jews for Jesus and Terry. Moreover, it is clearly distinguishable from those in City of Mesquite, Naturist Society and City of Fort Lauderdale. Accordingly, the fundamental conclusion that can be deduced from this line of cases is that **in the absence of some showing that the challenged practice will be resumed,** this Court is not presented with a live controversy on which to fashion relief and, therefore, WMSS's action is moot.[5] United States Constitution, art. III, § 2; Jews for Jesus, 162 F.3d at 629. As a result, Plaintiff's Motion for Summary Judgment must be denied on this basis alone.

## 2. THE 1997 SIGN CODE WAS CONSTITUTIONALLY SUFFICIENT

The effect and intent of the 1997 Sign Code was to place reasonable height, size and number restrictions on signs permitted regardless of their content in order to facilitate the health, safety and

---

[5]

Contrary to WMSS's assertions in its Motion for Summary Judgment, before a reasonable expectation of a recurrence can exist, something more must be demonstrated than the mere retention of power to do so by the enacting body. The Revolution Order, pp. 5-6 *quoting and citing,* 15 Moore's Federal Practice §101.98 at 181-85 (3rd ed. 1999); *see also,* Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637 (6th Cir. 1997)(requiring an **expressed intention by the governing body to reenact the prior legislative scheme** before the voluntary cessation exception will apply.) Id. at 645.

welfare of the public and to encourage architecturally compatible signs which efficiently transfer information. Despite WMSS's attempts to characterize the 1997 Sign Code as being unduly and improperly restrictive, it merely established height, size, number and frontage restrictions for specified permanent and temporary "on-premises" signs, while it prohibited "off-premises" signs with the exception of specified temporary "off-premises" signs. Moreover, the 1997 Sign Code did not define "on-premises" or "off-premises" signs and any attempt by WMSS to establish artificial parameters regarding these definitions simply denies the plain language of the ordinance and is misplaced.

The reasonable restrictions of the 1997 Sign Code were well within the parameters established by the Supreme Court in Metromedia v. City of San Diego, 453 U.S. 490 (1981) (a municipality may distinguish between commercial, on-premises signs and commercial, off-premises signs by regulating or banning off-premises signs to a greater degree than on-premises signs and that any such regulations properly advances aesthetic and safety interests.) *see also*, Southlake Prop. Associates v. City of Morrow, 112 F.3d 1114 (11th Cir. 1997).

In Southlake, the plaintiff lodged allegations, which were virtually identical to those asserted by WMSS in this matter, that Morrow's sign ordinance (the "Morrow Ordinance") violated the First and Fourteenth Amendments to the Constitution. Id. 1115. In conducting its analysis, the Eleventh Circuit determined that plaintiff's **allegations**, boiled to their essence, fell "into two categories: (1) that the ordinance impermissibly regulates *commercial* speech; and (2) that the ordinance unconstitutionally burdens *non-commercial* speech. Id.

-8-

After setting out the four-part test espoused in <u>Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York</u>, 447 U.S. 557 (1980), the Eleventh Circuit performed a thorough review of the Morrow Ordinance, the facts and law, and determined it did not violate the part of the <u>Central Hudson</u> test it was asked to review, i.e., the second prong. ("These purposes [maintaining the rights of the public to clean, aesthetically pleasing and safe business thoroughfares] have been recognized as significant governmental interests which support restrictions on the time, place, and manner of the display of commercial signs".) <u>Southlake</u> at 1116, *quoting* <u>Metromedia</u> at 507-08.

Despite WMSS's protestations to the contrary, the fact the Court did not analyze the Morrow Ordinance against every prong of the <u>Central Hudson</u> test is of no moment in this matter. The plaintiff in <u>Southlake</u> did not call on the Eleventh Circuit to perform such a review of the Morrow Ordinance because of the obvious nature of the outcome-it would pass constitutional muster. Likewise, the Wilton Manors Sign Code also satisfies the test. Following <u>Southlake</u>, any question as to the second prong has been resolved in favor of Wilton Manors. Turning to the third prong, Wilton Manors' Sign Code directly advances its recognized, protected interests by effectively limiting signs that would otherwise deter traffic flow and impair, if not destroy, certain aesthetic aspects of the panorama of Wilton Manors. Lastly, Wilton Manors' Sign Code is no broader than necessary to achieve its stated purpose.

> If the city has a sufficient basis for believing that billboards are...unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems that they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully

accomplishing its ends: It has not prohibited all billboards, but allows on-site advertising and some other specifically exempted signs.

Metromedia at 508.

Like the City of San Diego in Metromedia, CITY has gone no further than necessary to achieve its ends. Indeed, by not prohibiting all outdoor signage, the CITY has stopped short of fully accomplishing its ends. Outdoor Systems, Inc. v. City of Mesa, 997 F.2d 604, 611 (9th Cir. 1993). Accordingly, the 1997 Sign Code specifically complied with established, controlling law. Therefore, the Plaintiff's Motion for Summary Judgment should be denied.

### 3. SEVERABILITY OF PORTIONS OF THE 1997 SIGN CODE

As articulated above, it is clear WMSS's claims as to the 1997 Sign Code are moot. However, assuming, *arrguendo*, this court decides to somehow (i) revive the 1997 Sign Code, and (ii) subject it to constitutional scrutiny which somehow ultimately concludes the challenged portions are unconstitutional, those portions are severable and the remaining sections will pass constitutional muster.

Severability of a local ordinance is a question of state law. City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750 (1988). The Florida Supreme Court has proclaimed the affirmative duty of the courts to preserve the validity of the remaining portions of an enactment, unless the court can conclude either that the legislative body would not have enacted the regulation without the invalid portions or that the resulting altered enactment is "nonsensical." Small v. Sun Oil Co., 222 So.2d 196, 199 (Fla. 1969); Schmidt v. State, 590 So.2d 404, 415 (Fla. 1991). The proper inquiry is to

determine whether the unconstitutional provisions can be ... separated from the remaining valid provisions; the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and the bad features are not [so] inseparable...[in substance] that it can be said that the Legislature would have passed the one without the other; and an act complete in itself remains after the invalid provisions are stricken. Moreau v. Lewis, 648 So.2d 124, 128 (Fla. 1995), *citing* Presbyterian Homes v. Wood, 297 So.2d 556, 559 (Fla. 1974).

The 1997 Sign Code provided, in pertinent part:

ARTICLE 11. SIGN REGULATIONS

11-3. D.        Pole Signs. (detached, pylon and/or free-standing).

4.        Pole sign regulations: New and existing pole signs shall conform with the following regulations:

## SEE ATTACHED SCHEDULE 1

SCHEDULE 1.
POLE SIGN REGULATIONS

| Location Criteria | Max. Sign Area-(sq.ft.) | Max. Number Per Site | Max. Height | Setback |
|---|---|---|---|---|
| Meet any one of the below site criteria:<br>1. **300 ft. of frontage**<br><br>2. Occupies 50% or more of the block. | **128 sq.ft.agg.**<br><br>**64 sq.ft 1 side** | 1 per street frontage regardless of the number of uses on site. | **16 ft. to top of sign.**<br>If in corner line of site then 8 ft. clear ht. 14 ft. clear ht. If over a parking space or traffic lane. | **7 ft. to leading edge of sign.** |

Here, Plaintiff's applications clearly violated these valid restrictions in that they sought pole signs which (i) only utilized 150 feet of frontage, (ii) were between 50 and 75 feet in height, and (iii) were at least 672 square feet in area. All of which violated the sign code.

As demonstrated, the denials were based on provisions that could be effectively separated from the remaining valid provisions. The CITY's purpose of regulating or prohibiting signs or billboards for aesthetic and safety purposes is still accomplished. Moreover, even without the stricken provisions, the remaining portions would allow the CITY to maintain the ability, albeit within the confines established in <u>Metromedia</u>, to continue regulating billboards for the good of its citizenry. Moreover. even after striking the offending portions, the remainder of the ordinance would still effectuate the purpose enumerated in the preamble.

The 1997 Sign Code itself provides possibly the best evidence that the City Council of Wilton Manors would have enacted the surviving provisions, i.e., it contained a severability clause. 1997 Sign Code, Sec. 11-8 C.4. This inclusion reflects the City Council contemplated, and even provided for the possibility, that some of the provisions of the 1997 Sign Ordinance might be invalidated and, as such, its intent that the remaining portions would remain in effect. As the Florida Supreme Court stated in <u>Moreau</u>:

> [When reviewing a legislative act containing a severability clause] [a]lbeit not binding, legislatively expressed preference for the severability of a voided provision is persuasive.
>
> <u>Moreau</u> at 128.

As demonstrated, even assuming this Court will (i) engage in a review of the 1997 Sign Code and (ii) ultimately determine the challenged portions to be unconstitutional, it is clear the challenged

-12-

provisions are severable from the remaining, effective portions of the ordinance. As a result, Plaintiff's Motion for Summary Judgment should be denied.

## 4. WMSS IS PRECLUDED FROM RAISING A CHALLENGE TO THE 2000 SIGN CODE FOR THE FIRST TIME IN A MOTION FOR SUMMARY JUDGMENT

Because, as demonstrated immediately, *supra*, WMSS's claims are moot as to the 1997 Sign Code, it now improperly attempts to assert, **for the first time**, a challenge to the 2000 Sign Code in its Motion for Summary Judgment. Such and attempt to raise a new and completely separate claim in a motion for summary judgment should not be permitted by this court as it would prejudice CITY. In telling fashion, any claim as to the unconstitutionality of the 2000 Sign Code was noticeably absent from both WMSS's complaint and amended complaint. Such failure and omission, throughout two separate opportunities, belies the weakness of any such claim. Accordingly, this portion of WMSS's Motion for Summary Judgment is not properly before this court and should be stricken and denied.

In the event this court should allow WMSS to now challenge the 2000 Sign Ordinance, CITY asserts that it specifically complies with the Supreme Court's decision in <u>Metromedia</u>, 453 U.S. 490 (1981), and is constitutionally sufficient. *see*, section III. B. of the CITY's Memorandum of Law In Support of Motion for Summary Judgment.

## IV. CONCLUSION

Plaintiff's claims for declaratory and injunctive relief related to the 1997 Sign Code are moot and fail to present a justiciable controversy. The CITY's enactment of the 2000 Sign Code repeals

or otherwise remedies the challenged portions of the 1997 Sign Code and there is no reasonable expectation that the CITY will reinstate the challenged features of the 1997 Code.

To the extent any federal justiciable issue remains concerning the denial of Plaintiff's sign permit applications pursuant to the 1997 Code, the record affirmatively establishes that the applications sought to erect outdoor advertising structures which far exceeded the size, height and frontage requirements of the 1997 Code. These content neutral size, height and frontage limitations are clearly valid and severable from any challenged portions of the 1997 Sign Code.

Finally, Plaintiff may not now raise a challenge to the 2000 Sign Code in a motion for summary judgment and, as such, must be denied.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to **GARY R. RUTLEDGE, ESQUIRE**, Rutledge, Ecenia, Purnell & Hoffman, Attorneys for Plaintiff, 215 So. Monroe Street, Ste. 420, Tallahassee, FL 32301-1841, and **MYRON D. COHEN, ESQUIRE**, Hunton & Williams, Co-Counsel for Plaintiff, 200 Park Avenue, New York, NY 10166-0136, this _____ day of September, 2000.

JOHNSON, ANSELMO, MURDOCH, BURKE & GEORGE
**Attorneys for City of Wilton Manors**
790 East Broward Boulevard, Suite 400
Post Office Box 030220
Fort Lauderdale, Florida 33303-0220
Facsimile:     954/463-2444
Telephone:     954/463-0100 Broward
               305/943-2000 Dade

BY: _____
MICHAEL T. BURKE
Florida Bar No. 338771
WILLIAM H. BEAVER
Florida Bar No. 869007