UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6186-CIV-UNGARO-BENAGES



WILTON MANORS STREET SYSTEMS, INC.,

    Plaintiff,

vs.

CITY OF WILTON MANORS,

    Defendant.

_____/

### DEFENDANT, CITY OF WILTON MANORS', REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, CITY OF WILTON MANORS ("CITY" or "Defendant"), by and through its undersigned attorneys and pursuant to Local Rule 7.1, submits this Reply Memorandum of Law to Wilton Manors Street Information Systems, Inc. ("WMSS" or "Plaintiff") Response in Opposition to CITY's Motion for Summary Judgment and states as follows:

### MEMORANDUM OF LAW

### 1. THERE IS NO EVIDENCE CITY WILL REENACT THE CHALLENGED PORTIONS OF THE 1997 SIGN CODE THEREFORE WMSS'S ACTION IS MOOT

Wilton Manors clearly articulates its position that WMSS's current action was rendered moot by virtue of the CITY's enactment of the 2000 Sign Code in section III A. of its Memorandum of Law in Support of Motion for Summary Judgment (the "Motion for Summary Judgment") and



section 1. of its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment[1] (the "Memorandum in Opposition"). WMSS attempts to overcome the clear precedents cited by CITY in those sections by misplaced reliance on cases which are clearly distinguishable from this matter. Those cases relied upon by WMSS reflect utilization of the voluntary cessation exception to the mootness doctrine. However, those cases are distinguishable simply because the record in those matters demonstrated that the legislative body in question would probably, if not certainly, reenact the challenged ordinance/statute.[2] A plaintiff who challenges an ordinance, such as WMSS, simply cannot avail itself of the voluntary cessation exception to the mootness doctrine without some affirmative record evidence that the challenged ordinance will almost certainly be reenacted. Jews for Jesus v. Hillsborough County Aviation Authority, 162 F.3d 27 (11th Cir. 1998); Revolution Outdoor Advertising, Inc. v. City of Casselberry, 98-cv-1344-ORL-18C (M.D. Fla. 2000); 15 Moore's Federal Practice §101.98 at 181-185 (3rd ed. 1999); Kentucky Right to Life v. Terry, 108 F.3d 637 (6th Cir. 1997).

This application of the law simply effectuates the purpose of the doctrine, i.e., requirement of some actual case or controversy. If this were not the case, the mootness doctrine would have no

---

[1] It is significant to note that WMSS initiated this action on February 4, 2000, or some two weeks after CITY passed the amendments to the 1997 Sign Code. Obviously, it pursued this action with full knowledge that CITY had voluntarily taken action to address whatever concerns WMSS had regarding the 1997 Sign Code.

[2] Here, as in Revolution Outdoor Advertising, Inc. v. City of Casselberry, 98-cv-1344-ORL-18C (M.D. Fla. 2000), CITY produced record evidence, such as voluntarily initiating a review of its ordinance and engaging in substantial deliberation, that conclusively establishes it will not reenact the challenged portions of the amendment. ("Instead, the evidence, establishes [a clear intent not to reinstate the challenged ordinance]." The Revolution Order, p.7. *see*, Motion for Summary Judgment, pp. 10-11.

2

place in law, whatsoever, and any incentive legislative bodies have to prospectively remedy perceived or alleged improprieties would be completely vitiated. Moreover, it would propagate unnecessary litigation and further burden an already overworked judiciary with actions that, in effect, really do not exist as a matter of law.[3]

## 2. SEVERABILITY OF PORTIONS OF THE 1997 SIGN CODE

As articulated above, it is clear WMSS's claims as to the 1997 Sign Code are moot. However, assuming, *arrguendo*, this court decides to somehow (i) revive the 1997 Sign Code, and (ii) subject it to constitutional scrutiny which somehow ultimately determines some portions to be unconstitutional, those portions are severable and the remaining sections will pass constitutional muster.

The effect and intent of the 1997 Sign Code was to place reasonable, and constitutionally sufficient, height, size and number restrictions on signs in order to facilitate the health, safety and welfare of the public and to encourage architecturally compatible signs which efficiently transfer information. ("These purposes [maintaining the rights of the public to clean, aesthetically pleasing and safe business thoroughfares] have been recognized as significant governmental interests... .".) Southlake Prop. Associates v. City of Morrow, 112 F.3d 1114,

---

[3] It is also worth noting that the decisions and treatises cited by CITY, including Revolution, were decided or promulgated, respectively, subsequent to the case primarily relied on by WMSS, i.e., National Advertising Co. v. City of Fort Lauderdale, 934 F.2d 283 (11th Cir. 1991) and its progeny National II. Of course, those courts and noted authors had the benefit of the National decisions before reaching their respective positions. The obvious conclusion which can be drawn from this is, absent some record evidence the legislative body in question clearly intends to reenact the challenged portion of the ordinance, the underlying action is moot.

1116 (11th Cir. 1997), *quoting* Metromedia v. City of San Diego, 453 U.S. 490, 507-08 (1981). As demonstrated *infra*, it is clear those reasonable restrictions **were applicable regardless of the content of the message contained in any sign, whatsoever**. WMSS's attempts to ascribe artificial parameters, interpretations and applications regarding these restrictions simply denies the plain language of the 1997 Sign Code and belies the weakness of its action. Again, these valid restrictions in the 1997 Sign Code simply apply to height, size and numerosity of signs. As a result, standing alone, they satisfy the test for severability and provide a **valid** basis for denial of WMSS's applications.

Severability of a local ordinance is a question of state law, City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750 (1988), and it is established courts have an affirmative duty to preserve the validity of the remaining portions of an enactment, *unless* the court can conclude either that the legislative body would not have enacted the regulation without the invalid portions or that the resulting altered enactment is "nonsensical." Small v. Sun Oil Co., 222 So.2d 196, 199 (Fla. 1969); Schmidt v. State, 590 So.2d 404, 415 (Fla. 1991). The proper inquiry is to determine (i) whether the unconstitutional provisions can be ... separated from the remaining valid provisions; (ii) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; (iii) the good and the bad features are not [so] inseparable...[in substance] that it can be said that the Legislature would have passed the one without the other; and (iv) an act complete in itself remains after the invalid provisions are stricken. Moreau v. Lewis, 648 So.2d 124, 128 (Fla. 1995), *citing* Presbyterian Homes v. Wood, 297 So.2d 556, 559 (Fla. 1974).

A review of the 1997 Sign Code reveals that it clearly satisfies the test articulated in

4

Moreau.[4] A retrospective review of the 1997 Sign Code indicates that it provided, in pertinent part:

ARTICLE 11. SIGN REGULATIONS

11-3. D.    Pole Signs. (detached, pylon and/or free-standing).

    d.    Pole sign regulations: New and existing pole signs shall conform with the following regulations:

## SEE ATTACHED SCHEDULE 1

SCHEDULE 1.<br>POLE SIGN REGULATIONS

| Location Criteria | Max. Sign Area-(sq.ft.) | Max. Number Per Site | Max. Height | Setback |
|---|---|---|---|---|
| Meet any one of the below site criteria:<br>1. **300 ft. of frontage**<br><br>2. Occupies 50% or more of the block. | **128 sq.ft.agg.**<br><br>**64 sq.ft 1 side** | 1 per street frontage regardless of the number of uses on site. | **16 ft. to top of sign.**<br>If in corner line of site then 8 ft. clear ht. 14 ft. clear ht. If over a parking space or traffic lane. | 7 ft. to leading edge of sign. |

Here, Plaintiff's applications clearly violated these valid restrictions in that they sought pole signs which (i) only utilized 150 feet of frontage, (ii) were between 50 and 75 feet in height, and (iii) were at least 672 square feet in area. *See* City of Wilton Manors Appendix in support of

---

[4] CITY more fully sets out pertinent aspects of the 1997 Sign Code and the 2000 Sign Code amendments, together with related arguments, in sections III. C. and III, respectively, of its Memorandum of Law in Support of Motion for Summary Judgement.

5

Motion for Summary Judgment at Tab C. Accordingly, despite WMSS's protestations and allegations to the contrary, CITY's denials of WMSS's applications had nothing to do with <u>any content of the message, commercial, non-commercial, political or otherwise</u>. Rather, the denials were simply based on provisions that established caselaw has determined to be valid. <u>Metromedia</u>.[5]

As such, the 1997 Sign Code satisfies <u>Moreau</u> in that (i) these valid provisions are separable from any challenged or alleged <u>content</u> distinctions/deficiencies, (ii) The CITY's expressed purpose of regulating or prohibiting signs or billboards for aesthetic and safety purposes is still accomplished, (iii) it is clear the CITY would still have passed these proposed restrictions on height, size and numerosity of signs regardless of whether the challenged portions had appeared in the original version or not. This is evinced by the 1997 Sign Code containing a severability clause. <u>1997 Sign Code</u>, Sec. 11-8 C.4. While not **conclusive** as to the severability of 1997 Sign Code, this inclusion reflects the City Council contemplated, and even provided for the possibility, that some of the provisions of the 1997 Sign Ordinance might be invalidated. As such, this is demonstrative of the CITY's intent that the remaining portions **would stand alone and remain in effect**. Additionally, it provides support for virtual satisfaction of every element of the test in <u>Moreau</u>. As the Florida Supreme Court stated in <u>Moreau</u>:

> [When reviewing a legislative act containing a severability clause] [a]lbeit not binding, legislatively expressed preference for the severability of a voided provision is **persuasive**.

---

[5] If this Court were to follow the logic espoused by WMSS, **any** regulation would be in violation of the Constitution such that the entire ordinance must be struck down. Moreover, they would be allowed signs which were literally 500 feet in height and 5,000 square feet in area. Certainly, any such result is untenable.

<u>Moreau</u> at 128. (emphasis added).

Finally, the 1997 Sign Code would be an act complete in itself even if the challenged provisions were stricken because it would effectively accomplish the CITY's purpose enumerated in the preamble. The "completeness" is further evidenced by the fact the 1997 Sign Code did not define "on-premises" or "off-premises" signs. If CITY had intended some other regulation as to those matters or content therein it would have specifically defined those terms. Instead, it set out restrictions that validly and unequivocally accomplished the stated purpose. Accordingly, the valid restrictions of the 1997 Sign Code utilized by the CITY in denying WMSS's Applications are certainly not "*nonsensical*" as required by <u>Small</u>. This inescapable conclusion is true whether analyzed as a whole or completely independent of any other portions of the 1997 Sign Code. Consequently, every element of any test for severability is satisfied.

As a result, even assuming this Court will (i) engage in a review of the 1997 Sign Code and (ii) ultimately determine certain portions to be unconstitutional, it is clear the challenged provisions are severable from the remaining, effective portions of the ordinance. As a result, Plaintiff's Motion for Summary Judgment should be denied.

## IV. <u>CONCLUSION</u>

Plaintiff's claims for declaratory and injunctive relief related to the 1997 Sign Code are moot and fail to present a justiciable controversy. The CITY's enactment of the 2000 Sign Code repeals or otherwise remedies the challenged portions of the 1997 Sign Code and there is no reasonable expectation that the CITY will reinstate the challenged features of the 1997 Code.

To the extent any federal justiciable issue remains concerning the denial of Plaintiff's

sign permit applications pursuant to the 1997 Code, the record affirmatively establishes that the applications sought to erect outdoor advertising structures which far exceeded the size, height and frontage requirements of the 1997 Code. These content neutral size, height and frontage limitations are clearly valid and severable from any challenged portions of the 1997 Sign Code.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to **GARY R. RUTLEDGE, ESQUIRE**, Rutledge, Ecenia, Purnell & Hoffman, Attorneys for Plaintiff, 215 So. Monroe Street, Ste. 420, Tallahassee, FL 32301-1841, and **MYRON D. COHEN, ESQUIRE**, Hunton & Williams, Co-Counsel for Plaintiff, 200 Park Avenue, New York, NY 10166-0136, this 29th day of September, 2000.

JOHNSON, ANSELMO, MURDOCH, BURKE & GEORGE
**Attorneys for City of Wilton Manors**
790 East Broward Boulevard, Suite 400
Post Office Box 030220
Fort Lauderdale, Florida 33303-0220
Facsimile:   954/463-2444
Telephone:  954/463-0100 Broward
            305/945-2000 Dade

BY: _____
MICHAEL T. BURKE
Florida Bar No. 338771
WILLIAM H. BEAVER
Florida Bar No. 869007