UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6186-CIV-UNGARO-BENAGES



WILTON MANORS STREET SYSTEMS, INC.,

    Plaintiff,

vs.

CITY OF WILTON MANORS,

    Defendant.
_____/

## DEFENDANT, CITY OF WILTON MANORS, AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Defendant, CITY OF WILTON MANORS ("CITY"), by and through its undersigned attorneys and pursuant to Local Rule 16.1, United States District Court for the Southern District of Florida, the Scheduling Order for Pretrial Conference and Trial entered on May 17, 2000, respectfully submits the following Amended Proposed Findings of Fact and Conclusions of Law, and states as follows:

### PROPOSED FINDINGS OF FACT

1.    The CITY adopted a sign ordinance on May 27, 1997, by passage of Ordinance No: Z-199, and amended it on February 10, 1998, by passage of Ordinance Z-205. (Together the "1997 Sign Code")

2.    In July 1999, WMSS submitted six (6) applications to the CITY for permits to construct billboards at various leased locations throughout Wilton Manors (the "Applications").

1

3. In October of 1999, the City Commission voluntarily initiated a review of the 1997 Sign Code.

4. On or about January 25, 2000, CITY passed Ordinance No: Z-212 (the "2000 Sign Code") on its first reading and again on February 8, 2000, on its second reading. The 2000 Ordinance amended the 1997 Sign Code.

5. The 1997 Sign Code established height, size, number and frontage restrictions for specified permanent and temporary "on-premises" signs, while it prohibited "off-premises" signs with the exception of specified temporary "off-premises" signs. The 1997 Sign Code did not define "on-premises" or "off-premises" signs. The 1997 Sign Code provided, in pertinent part:

ARTICLE 11. SIGN REGULATIONS

11-3. D.    Pole Signs. (detached, pylon and/or free-standing).

    4.    Pole sign regulations: New and existing pole signs shall conform with the following regulations:

# SEE ATTACHED SCHEDULE 1

SCHEDULE 1.
POLE SIGN REGULATIONS

| Location Criteria | Max. Sign Area-(sq.ft.) | Max. Number Per Site | Max. Height | Setback |
|---|---|---|---|---|
| Meet any one of the below site criteria:<br>1. **300 ft. of frontage**<br><br>2. Occupies 50% or more of the block. | 128 sq.ft.agg.<br><br>64 sq.ft 1 side | 1 per street frontage regardless of the number of uses on site. | 16 ft. to top of sign.<br>If in corner line of site then 8 ft. clear ht. 14 ft. clear ht. If over a parking space or traffic lane. | 7 ft. to leading edge of sign. |

6. The Applications sought to erect billboard structures which, at the top, would have a dual sided sign with approximately 672 square feet of area per side and were to be between 50 and 75 feet in height. One of the six billboards would be equipped with a tri-vision face which would allow each side of the sign to display, on a rotating basis, three separate messages per side or a total of six messages for that particular billboard. Moreover, the Applications did not describe the content of messages to be placed on the proposed billboards but indicated the messages would change from time to time and would include non-commercial as well as off-premises commercial content.

7. Plaintiff's applications violated the valid restrictions of the 1997 Sign Code in that they sought pole signs which (i) only utilized 150 feet of frontage, (ii) were between 50 and 75 feet in height, and (iii) were at least 672 square feet in area. Moreover, because the Applications proposed interchangeable messages they violated the 1997 Sign Code's valid restrictions on off-premises commercial advertising.

8. On or about August 10, 1999, CITY denied the Applications because the proposed billboards would be in violation of the 1997 Sign Code which prohibited off-premises commercial signage and because the proposed structures exceeded the size, height and frontage requirements of the 1997 Sign Code.

9. On January 25, 2000, the CITY amended the 1997 Ordinance to clarify and **emphasize CITY'S intent that its sign code be interpreted and applied in a content-neutral manner** and regulate off-premises commercial speech. The pertinent amendments of the 2000 Sign Code are as follows:

11-1   PURPOSE

1. To create an aesthetic and enjoyable appearance for city visitors and residents.
2. To safeguard and enhance property values within the community.
3. To preserve the beauty and unique character of the city.

3

      4.      To promote pedestrian and traffic safety.

Any sign containing noncommercial copy shall be deemed an on-premises sign, and any sign authorized in this article is allowed to contain noncommercial copy in lieu of any other copy.
<u>Section 2.</u>      That Section 11-5(B) of Article 11 of the Zoning Ordinance of the City of Wilton Manors, titled "Schedule 3, Schedule of Requirements for Temporary Signs" is hereby amended to add an additional sixth Category to the five categories of temporary signs already contained therein, to read as follows:

6.      Category:      Political Signs

| | |
|---|---|
| Number: | Maximum of two signs per property |
| Sign Area: | Maximum area per sign: Thirty-two (32) square feet; Maximum height per sign: Fifteen (15) feet; Total area of all signs on one property; One square foot per foot of street frontage, not to exceed one hundred (100) square feet per property. |
| Time Period: | Political signs, pertaining to a time, event purpose which is no longer imminent or pending shall be removed within seven days subsequent to said time or event. |
| Special Conditions: | N/A |

      10.      On February 4, 2000, with knowledge that CITY had passed the 2000 Sign Code, which amended the 1997 Sign Code to effectively remove any alleged constitutional deficiencies, WMSS filed its Complaint challenging the constitutionality of the 1997 Sign Code.

      11.      On February 8, 2000, the 2000 Sign Code was adopted on its second reading.

      12.      On June 8, 2000, Plaintiff filed an Amended Complaint, which again sought **declaratory and injunctive relief and contends that CITY'S 1997 Sign Code violates the First and Fourteenth Amendments.**

      13.      Plaintiff's Amended Complaint does not challenge the validity of the 2000 Sign Code, nor has Plaintiff moved to amend it to assert any claims based upon the 2000 Sign Code.

      14.      The CITY does not intend to repeal the 2000 Sign Code in any manner, whatsoever.

<u>Joint Pretrial Stipulation</u>, p. 3.

## PROPOSED CONCLUSIONS OF LAW

1. Because the CITY has no intentions of repealing the 2000 Sign Code and, therefore, has no intention of reenacting any portion of the 1997 Sign Code, this action is moot because the 1997 Sign Code is no longer in existence. ("**There is no indication from the record that the City has any intention of reenacting the challenged portions of the 1992 Ordinance... . Therefore, Revolution's challenge to the 1992 Ordinance is moot.**") Revolution Outdoor Advertising v. City of Casselberry, (11th Cir. Sept. 29, 2000) slip opn. p. 3 (emphasis added) (the "Eleventh Circuit's Revolution Order"), *affirming*, Revolution Outdoor Advertising v. City of Casselberry, 98-cv-1344-ORL-18C (M.D. Fla. 2000); Naturist Society, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992)(Voluntary cessation exception to the mootness doctrine only applies when it appears the governing body clearly intends to reenact the challenged legislation.); Kremens v. Bartley, 431 U.S. 119, 135 (1977); *(see also,* 15 Moore's Federal Practice § 101.98 (3rd ed. 1999), and cases cited therein; Crosby v. Hospital Authority of Valdosta and Lowndes County, 93 F.3d 1515, 1533-34 (11th Cir. 1996); Jews for Jesus v. Hillsborough County Aviation Authority, 162 F.3d 627 (11th Cir. 1998); *see also*, Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637 (6th Cir. 1997).

2. Plaintiff did not challenge the 2000 Sign Code in either its Complaint or its Amended Complaint and did not seek leave to amend to challenge the 2000 Sign Code. Accordingly, the **constitutionality of the 2000 Sign Code is not properly before this Court.** Revolution Outdoor Advertising v. City of Casselberry, (11th Cir. Sept. 29, 2000) slip opn. p.3. ("This court declines to hear Revolution's challenge to the 1999 Ordinance. It is undisputed that the City passed the 1999 Ordinance after Revolution had filed its complaint challenging the 1992 Ordinance. Revolution failed to seek leave to amend its complaint to challenge the 1999 Ordinance, instead raising the issue only in its memorandum in opposition to the City's summary judgment motion. **Accordingly, the question of the constitutionality of the 1999 Ordinance is not properly before this court.**"). Id.

(emphasis added).

3. Because Plaintiff filed this action after the CITY had already taken steps to amend its 2000 Sign Code, thereby mooting the Plaintiff's action before it was ever filed, Plaintiff is not entitled to attorneys' fees, whatsoever. ("An unfortunate result of the very worthy purpose of Section 1988 is that plaintiffs' counsel cannot obtain fees unless the plaintiff prevails in an 'action or proceeding to enforce' one of the civil rights statutes. **A lawsuit must be filed before a plaintiff can become eligible for attorney's fees**. So, [in fact] section 1988...discourages the lawyers from entering into settlement negotiations until a lawsuit is on file.") Snyder v. Shearer, 573 F.Supp. 156, 158 (S.D. Iowa 1983) *quoting* 42 U.S.C. §1988 (emphasis added).

4. To the extent this Court will, despite it being completely removed from consideration by enactment of the 2000 Sign Code, revive and revisit the 1997 Sign Code, it validly placed reasonable and constitutionally sufficient, height, size, number and area restrictions on signs in order to facilitate the health, safety and welfare of the public and to encourage architecturally compatible signs. Meteromedia v. City of San Diego, 453 U.S. 490, 510 (1981)(A municipality may regulate or prohibit signs or billboards for aesthetic purposes.)

5. The 1997 Sign Code's reasonable distinctions between on-premise commercial signs and off-premise commercial signs is a completely valid exercise of the CITY's inherent powers. Metromedia, 453 U.S. 490 (1981)(A municipality may distinguish between commercial, on-premises signs and commercial, off-premises signs by regulating or banning off-premises signs to a greater degree than on-premises signs and that any such regulations properly advances *aesthetic and safety* interests.) Id.

6. The 1997 Sign Code did not differentiate or distinguish between on-premises commercial and non-commercial signage and, therefore, is valid. Southlake Prop. Associates v. City of Morrow, 112 F.3d 1114 (11th Cir. 1997). (Non-commercial signage is property interpreted as "on

site").

7. To the extent any other portions of the 1997 Sign Code are constitutionally insufficient, those portions were amended and cured by the 2000 Sign Code and any such claim is moot. Revolution Outdoor Advertising v. City of Casselberry, (11th Cir. Sept. 29, 2000) slip opn. p. 3.

8. To the extent any other portions of the 1997 Sign Code are constitutionally insufficient, those portions are properly severable and the remaining portions will pass constitutional muster. (Severability of a local ordinance is a question of state law.) City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750 (1988). (The Florida Supreme Court has proclaimed the **affirmative duty of the courts to preserve the validity of the remaining portions of an enactment**, unless the court can conclude either that the legislative body would not have enacted the regulation without the invalid portions or that the resulting altered enactment is "nonsensical.") Small v. Sun Oil Co., 222 So.2d 196, 199 (Fla. 1969); Schmidt v. State, 590 So.2d 404, 415 (Fla. 1991). The inclusion of a severability clause [such as the one in the 1997 Sign Code] reflects the City Council contemplated, and even provided for the possibility, that some of the provisions of the 1997 Sign Ordinance might be invalidated and, as such, its intent that the remaining portions would remain in effect. ("When reviewing a legislative act containing a severability clause] [a]lbeit not binding, legislatively expressed preference for the severability of a voided provision is persuasive."). Moreau v. Lewis, 648 So.2d 124, 128 (Fla. 1995).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to **GARY R. RUTLEDGE, ESQUIRE**, Rutledge, Ecenia, Purnell & Hoffman, Attorneys for Plaintiff, 215 So. Monroe Street, Ste. 420, Tallahassee, FL 32301-1841, and **MYRON D. COHEN, ESQUIRE**, Hunton & Williams, Co-Counsel for Plaintiff, 200 Park Avenue, New York, NY 10166-0136, this 20th day of October, 2000.

> JOHNSON, ANSELMO, MURDOCH, BURKE & GEORGE
> **Attorneys for City of Wilton Manors**
> 790 East Broward Boulevard, Suite 400
> Post Office Box 030220
> Fort Lauderdale, Florida 33303-0220
> Facsimile:   954/463-2444
> Telephone:  954/463-0100 Broward
>                    305/945-2000 Dade
>                    561/640-7448 WPB
>
> BY: _____
>      MICHAEL T. BURKE
>         Florida Bar No. 338771
>      WILLIAM H. BEAVER
>         Florida Bar No. 869007

#20035MTB/WHB