UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6186-CIV-UNGARO-BENAGES

WILTON MANORS STREET
SYSTEMS,
    Plaintiff,

vs.                           **OMNIBUS ORDER**

CITY OF WILTON MANORS,
    Defendant.
_____/

FILED by _____ D.C.
DEC 0 5 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, filed August 25, 2000, Plaintiff's Motion for Summary Judgment, filed August 25, 2000 and Plaintiff's Motion for Leave to File Supplemental Affidavit of Daniel L. Hardin, filed November 21, 2000.

THE COURT has considered the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises. Plaintiff filed this action on February 4, 2000 seeking declaratory and injunctive relief and attorney's fees challenging the City of Wilton Manors' 1997 Sign Code under the First and Fourteenth Amendments, which regulates the use of outdoor advertising within city limits. Plaintiff moves for summary judgment on the grounds that the enactment of the ordinance was an unconstitutional exercise of the City's police power and an abridgment of Plaintiff's First Amendment rights. Defendant argues it is entitled to summary judgment because Plaintiff's challenge of the 1997 Sign Code is moot due to the City's enactment of the 2000 Sign Code that repealed or otherwise remedied the contested portions of the 1997 Sign Code. Alternatively, Defendant argues that any of the challenged portions of the 1997 Sign Code which this Court may find to be unconstitutional can be severed from the remaining constitutional portions.

## **LEGAL STANDARD**

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The *Adickes* Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See Adickes*, 398 U.S. at 157; *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (citing *Adickes*).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts then the Court should deny summary

judgment. *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## FACTUAL BACKGROUND

The following material facts are not in dispute. Street Information Systems ("SIS") engages in the business of leasing outdoor advertising space on large billboards in various locations throughout Wilton Manors. These billboards advertise merchandise or services provided at locations other than the location of the sign. Def.'s Statement of Undisputed Material Facts ("Def.'s Stmt.") at 1. On May 27, 1997, the City enacted Sign Ordinance No. Z-199. Section 11-5(C) of Ordinance No. Z-199 was amended by Ordinance No. Z-205 on February 10, 1998. (Together the "1997 Sign Code"). *See* Def.'s Exhibits A, B, E. On July 8, 1999, SIS submitted six permit applications to construct outdoor advertising off-premises signs within the City. Def.'s Exhibits C; Pla.'s Stmt of Undisputed Material Facts ¶ 3. On August 10, 1999, the City notified SIS that its

applications had been denied because the proposed signs would be in violation of the 1997 Sign Code. Pla.'s Stmt of Undisputed Material Facts ¶ 5. On September 1, 1999, SIS's counsel notified the City that the 1997 Sign Code was patently unconstitutional. *Id.* ¶¶ 6, 7. On January 25 and February 8, 2000, the City Council passed and adopted Ordinance No. Z-212 on the first and second readings, respectively, which amended the challenged portions of the 1997 Sign Code ("2000 Sign Code"). Def.'s Exhibit E. On February 4, 2000, SIS filed their Complaint challenging the constitutionality of the 1997 Sign Code.

## LEGAL ANALYSIS

Wilton Manors' 1997 Sign Code regulates all types of signs and outdoor advertising. The Sign Code's purposes include permitting signs that by their size, location, construction or manner of display will not endanger the health, safety and general welfare of the public, encouraging signs that are "architecturally compatible with the building upon which they are placed" and facilitating and efficiently transferring information. Sign Code Sec. 11-1 (1997) ("Sec. xx (1997)"). The key section of the ordinance provides that signs may only contain on-premises advertising, meaning the copy or text on the sign may only describe the "name of the premises or uses of the property and generic symbols or words which describe products or services." Sec. 11-3(P) (1997). Thus a property owner could erect a sign that said "shoes sold here," but not one saying "stop child labor" or "buy brand X", unless brand X was sold there.

The 1997 Sign Code also includes a variety of exceptions to the broad rule prohibiting off-premises signs. For example, the ordinance allows signs for historical purposes, signs directing traffic on private property, temporary political signs and signs associated with recognized holidays.

Secs. 11-3(C)(2)-(3); 11-5(C)(Temporary Signs)[1]; 11-5(E)(Temporary Signs). Finally, the bulk of the ordinance concerns time, place and manner restrictions describing the permit process and the sizes and characteristics of signs that are permitted. The ordinance also contains a severability clause. Sec. 11-8(C)(4) (1997).[2]

SIS claims the 1997 Sign Code is facially unconstitutional because it impermissibly allows on-premises commercial speech, but prohibits off-premises, commercial and non-commercial speech, with certain specified exceptions for non-commercial speech. Pla.'s Motion at 6-7. In addition, SIS argues the exceptions for noncommercial speech impermissibly require a subjective examination of the content of the wording of each sign. *Id.* at 7. SIS also argues the ordinance's distinction between on-premises and off-premises commercial advertising bears no relationship to the City's asserted interests in traffic safety and maintaining an attractive appearance, and less restrictive means were available to advance the City's interests. *Id.* at 2. Moreover, SIS claims the ordinance unconstitutionally favors commercial signs over political signs and impermissibly treats political signs differently depending on their content. *Id.*

In addition to these constitutional infirmities, SIS claims that the challenged provisions are not severable from the ordinance thereby making the Sign Code unconstitutional in its entirety. Pla.'s Resp. at 3-11. Finally, SIS claims that under Florida law it acquired vested rights to construct

---

[1] The Court notes that Ordinance No. Z-199 provided by Defendant has two sections titled 11-5. The first regulates Temporary Signs and the second regulates Sign Regulations Per Zoning District. For clarity, the Court will refer to the first as Sec. 11-5 (Temporary Signs) and the second as Sec. 11-5 (Zoning).

[2] Section 11-8(C)(4) states: "[i]f any section, sentence, clause, or phrase of this ordinance is held to be invalid or unconstitutional by any court of competent jurisdiction, then said holding shall in no way affect the validity of the remaining portions of this ordinance."

5

the billboards when it applied for permits with the City and is therefore entitled to injunctive relief. *Id.* at 2-3.

The 2000 Sign Code amended the "purpose" section of the 1997 Sign Code, the regulations governing non-commercial speech and the provisions regarding temporary political signs. The amended "purpose" of the Sign Code is to create an aesthetic and enjoyable appearance for city visitors and residents; to safeguard and enhance property values within the community; to preserve the beauty and unique character of the city; and to promote pedestrian and traffic safety. Secs. 11-1(D)-(G) (2000). In addition, the 2000 Sign Code provides that "[a]ny sign containing noncommercial copy shall be deemed an on-premises sign, and any sign authorized in this article is allowed to contain noncommercial copy in lieu of any other copy." Sec. 11-1 (2000). Also, the ordinance deleted Section 11-5(C), entitled "Temporary Political Signs" and under the section regulating Temporary Signs added another category for political signs.

(1) *Constitutionality of 1997 Sign Code*

Relying on the Supreme Court's plurality decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), Plaintiff challenges the 1997 Sign Code's regulation of commercial speech, which allows on-premises commercial signs, but prohibits off-premises commercial and noncommercial signs, with several exceptions for noncommercial speech. In *Metromedia*, the Court examined a sign ordinance similar to the one at issue here and determined that it violated the First Amendment in two ways. The plurality, after considering that commercial speech is afforded less protection than other types of protected speech, and after reviewing San Diego's ordinance that allowed only on-site advertising with various exceptions, concluded that the ordinance improperly preferred commercial speech over noncommercial speech and was in violation of the First

Amendment. *Id.* at 513.

In addition, the plurality found that San Diego's ordinance was unconstitutional because of the exception provisions. Typically, the government may not pick and choose among various types of noncommercial speech based on content. *Id.* at 514-15. According to the Court, by allowing exceptions for signs with noncommercial content, such as news information and historical information, but not other types of noncommercial speech, the law contained impermissible content-based restrictions.[3] *Id.* at 515 (noting "[b]ecause some noncommercial messages may be conveyed on billboards . . ., San Diego must similarly allow billboards conveying other noncommercial messages").

Applying this analysis, the undersigned finds that Wilton Manors' 1997 Sign Code is facially unconstitutional. As in *Metromedia*, the 1997 Sign Code favors commercial speech over noncommercial speech by permitting on-site advertising, but prohibiting off-premises non-commercial speech. Likewise, the 1997 Sign Code chooses among various types of noncommercial speech based on content by broadly prohibiting off-premises, non commercial speech, but allowing various exceptions based on the content of the sign.[4]

---

[3] A majority of the Court also agreed that the ordinance did not violate the First Amendment by allowing onsite commercial speech while forbidding commercial speech pertaining to offsite commerce. *Metromedia*, 453 U.S. at 493-512 (plurality opinion Parts I-IV joined by Justice Stevens). According to the Court, the government has more freedom in discriminating among various types of commercial speech than among noncommercial speech and found that the San Diego law satisfied the *Central Hudson* test for laws that affect commercial speech. This Court notes that although SIS challenges this holding based on subsequent case law, it is unnecessary for the undersigned to reach this issue and therefore declines to do so. *See* Pla.'s Motion at 7-9.

[4] Because the Court finds the 1997 Sign Code unconstitutional on these grounds, it is unnecessary to address Plaintiff's argument, *inter alia*, that the regulation of temporary political

(2) *Severability Provision in 1997 Sign Code*

After finding that portions of Wilton Manors' 1997 Sign Code are unconstitutional, this Court next considers whether the invalid portions can be severed from the valid portions, thus preserving the remainder of the ordinance. Severability of an ordinance is a question of law. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 752 (1988). Courts have an affirmative duty to preserve the validity of the remaining portions of the law, unless the court can conclude either that the legislative body would not have enacted the regulation without the invalid portions or that the resulting altered enactment is "nonsensical." The proper inquiry is to determine whether (1) the unconstitutional provisions can be . . . separated from the remaining valid provisions; (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other; and (4) an act complete in itself remains after the invalid provisions are stricken. *Moreau v. Lewis*, 648 So. 2d 124, 128 (Fla. 1995) (citing *Presbyterian Homes v. Wood*, 297 So. 2d 556, 559 (Fla. 1974)). *See also Cramp v. Board of Public Instruction of Orange County*, 137 So.2d 828, 830-31 (Fla. 1962) (applying this rule and concluding that the objectionable language in the loyalty oath could be eliminated without destroying the remainder of the oath). Severance is inappropriate when the valid and invalid provisions are so intertwined that excision of the invalid provisions would leave a regulatory scheme that the legislature never intended. *National Advertising Co. v. Town of Niagara*, 942 F.2d 145, 148 (2d Cir. 1991). Thus, this Court must determine if severance of the unconstitutional provisions, that

---

signs is also unconstitutional. *See* Pla.'s Motion at 9-11.

8

is the provisions regulating the copy or wording of signs in favor of on-premises commercial speech and discriminating among types of noncommercial speech, could save the ordinance.

Superficially, severance appears feasible to the extent the ordinance restricts the copy of on-premises signs by eliminating Section 11-3(P). However, a more detailed review of the ordinance as a whole shows that Section 11-3(P) is implemented throughout the ordinance in various ways. *See e.g.*, Sec. 11-5(A)(3) (Temporary Signs);[5] Sec. 11-5(A)(1) (Zoning);[6] 11-3(F);[7] and Schedules 1, 2 and 3. Therefore, in order to sever the unconstitutional provisions, the Court would not only have to sever Section 11-3(P), but all other provisions regulating copy. *See id*. This would involve the creation of gaps in the ordinance because some of these provisions appear mid-sentence, such as in Sections 11-3(F) and 11-5(F) (Temporary Signs)[8] and others appear in some subsections, but not in others, such as Section 11-5(A)(3) (Temporary Signs).

Similarly, by severing the provisions that exempt some noncommercial signs from the permit process based on content, the ordinance would exempt all signs of any type, size or location

---

[5] Sec 11-5(3) (1997) (Temporary Signs) reads: "Copy shall be limited to the Uses permitted in the zoning district in which the property is located."

[6] Sec. 11-5(A)(1) (1997) (Zoning) is severed to the extent it limits the copy on accessory signs to the "Uses permitted in the zoning district where the property is located." Without a definition of an "accessory sign" and without knowing the uses permitted in each zoning district, the Court is left to assume that this provision favors certain copy based on content and therefore violates the First Amendment.

[7] Sec. 11-3(F) (1997) regulating window signs, states in part: "In addition to other permitted signs, one sign is permitted on one window or door with copy limited to the name of the commercial use and/or hours of operation with the maximum letter size of six (6) inches."

[8] Sec. 11-5(F)(8) (1997) (Temporary Signs) states in part: "These signs shall be limited to the name of a restaurant or retail art related sales, current list and prices of foods, food preparations or products available in that restaurant or retail art business."

containing noncommercial speech from the permit process.[9] *See, e.g.*, Sections 11-3(C), 11-5(E) (Temporary Signs),[10] 11-5(A)(6) (Zoning).[11] However, it appears from the ordinance that the City was concerned with regulating the size, location and construction of the structures containing noncommercial messages, rather than with the messages themselves. *See Metromedia*, 649 P.2d at 187. Accordingly, the Court does not believe the City Council would have enacted an ordinance deregulating noncommercial signs in their entirety and therefore does not agree with the City that it can merely sever the offending provisions. *See Revere National Corp. v. Prince George's County*, 819 F. Supp. 1336, 1348 (D. Md. 1993) (stating "before the offending provisions may be severed, the remaining provisions must be consistent with the legislative intent of the statute").

Based on this analysis, this Court finds that it cannot sever the provisions that restrict the

---

[9] Alternatively, by severing the entire sections which exempt certain types of noncommercial speech from the permit requirements, the ordinance could be construed as only regulating commercial speech. After a careful review of the ordinance, however, the Court finds that this interpretation does no more to further the legislative intent because it would obscure the section regulating political signs. *See* Sec. 11-5 (1997) (Temporary Signs). Moreover, such an ordinance would require the City Council to police the content of advertising messages, and would compel it to distinguish commercial from noncommercial speech -- an extremely difficult task, and one which presents serious constitutional problems. *Metromedia*, 649 P.2d at 908 (citing *Metromedia*, 453 U.S. at 536-40).

[10] Sec. 11-5(E) (1997) (Temporary Signs) that allows decorations and festoons of lights for "limited recognized holidays" must be severed because it impermissibly differentiates between holiday signs based on whether the holiday and its colors and symbols are recognized by the City of Wilton Manors.

[11] Sec. 11-5(A) (1997) (Zoning) requires the Community Services Director to approve signs on a public right of way for places of worship, public institutions and points of interest, as well as signs on private property relating to the name of the neighborhood if they meet the requisite size requirements. In effect, this is an impermissible exemption of some types of noncommercial speech because the signs enumerated in this provision are approved by means other than the permit process.

copy of on-premises signs and exempt certain types of noncommercial speech because of the tortured construction of the ordinance that would result. *See National Advertising Co.*, 942 F.2d at 149-151 (deciding against severance of the provisions that restricted signs to onsite advertising and that exempted certain types of noncommercial speech because the court was not convinced that the remaining structure would be "administered in a fair, coherent, and equitable manner"). Accordingly, this Court finds that severance of the unconstitutional provisions is unworkable and the ordinance must be declared unconstitutional as a whole.

(3) *Vested Rights*

In addition to declaratory relief, Plaintiff also seeks a preliminary injunction against the City from enforcing the 1997 Sign Code against it. Pla.'s Compl. at 6. Plaintiff claims it acquired vested rights when the City denied its permits on August 10, 1999, based on the unconstitutional 1997 Sign Code.[12] Pla.'s Resp. at 3. Relying on *National Advertising Co. v. City of Fort Lauderdale*, 8 F.3d 36 (11th Cir. Oct. 26, 1993) (per curiam) (unpublished table decision no. 92-4750) ("National II"),[13] Plaintiff argues it has vested rights in the six sign permits because all the applications were filed with the City at a time when no constitutionally valid sign ordinance was in effect in the City. Pla.'s

---

[12] In a letter dated August 10, 1999, the City denied Plaintiff's permits because the proposed billboards would be in violation of the 1997 Sign Code which prohibited off-premise commercial signage, and because the proposed signs exceeded the size, height and frontage requirements of the 1997 Sign Code. *See* Affidavit of Daniel L. Hardin, Exhibit B; Def.'s Reply at 7-8.

[13] This is an unpublished opinion, governed by Rule 36-2 of the Eleventh Circuit, which states: "An opinion shall be unpublished unless a majority of the panel decides to publish it. Unpublished opinions are not considered binding precedent. They may be cited as persuasive authority, provided that a copy of the unpublished opinion is attached to or incorporated within the brief, petition, motion or response in which such citation is made."

Resp. at 2-3. According to the Eleventh Circuit in *National II*, when a party submits an application for a permit that satisfies all existing and pending laws, the municipality lacks authority to deny the permit and the permit must issue even when a new law is passed after the application was filed. *National II* at 4, 6 (citations omitted); *see also Bhoola v. City of St. Augustine Beach*, 588 So.2d 666, 667 (Fla. Dist. Ct. App. 1991); *Smith v. City of Clearwater*, 383 So. 2d 681, 688-89 (Fla. Dist. Ct. App. 1980) (stating an applicant is entitled to a permit which is within the provisions of the existing law so long as the new law that would preclude the intended use is not pending at the time the application is made). The rule is the same when the existing law purportedly <u>prohibits</u> the desired use, but the existing law is later declared unconstitutional. *National II* at 6.

This Court finds that because no valid City of Wilton Manors' ordinance prohibited the signs when SIS applied for the permits, the permits should have issued as long as they were in compliance with the state of Florida's sign regulations then in effect. Furthermore, notwithstanding Defendant's arguments of mootness, the 2000 Sign Code has no effect on SIS's rights to the permits because it was not pending at the time SIS filed its application.[14] *See id.* at 5, 7 (citations omitted). Consequently, this Court finds that Plaintiff has vested rights and is, therefore, entitled to injunctive relief.

## CONCLUSION

Based on all the record facts and relevant authorities, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Leave to File Supplemental

---

[14] Insofar as Plaintiff argues in its Motion that the City's 2000 Sign Ordinance is unconstitutional, Pla.'s Motion at 13-16, the undersigned has not considered this argument given that it was raised for the first time in Plaintiff's Motion and does not appear in either Plaintiff's Complaint or Amended Complaint. *See* Def.'s Oppo. at 13.

Affidavit of Daniel L. Hardin is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 5 day of December, 2000.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record